[No. 3469.   Decided March 11, 1901.]

JOHN MEGRATH, *Appellant,* v. F. O. NICKERSON *et al.,* *County Commissioners for King County, Respond- ents.*

HIGHWAYS — PRESCRIPTIVE RIGHT — INTERRUPTION OF USE BY PUBLIC.

A title by prescription to a highway did not inure to the benefit of the public from the fact that the public had been permitted for a number of years to travel a road across private premises, and that that portion of the road had been worked by the county during the absence of the owner, when there were distinct acts on the part of the owner, prior to the maturing of a prescriptive right, indicating an intention not to dedicate a highway, such as maintaining gates across the road, and posting notices thereon that it was private property, and demanding that the gates be kept shut.

SAME — LAYING OUT — VALIDITY.

The fact that viewers appointed by the county commissioners to survey a road in pursuance of a petition therefor continue the survey beyond the limits set by the petition would give no author- ity to the county to establish a road beyond the point named in the petition.

Appeal from Superior Court, King County.—Hon. WILLIAM HICKMAN MOORE, Judge.  Reversed.

*Preston, Carr & Gilman,* for appellant.

*James F. McElroy, John B. Hart* and *Walter S. Ful- ton,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—This action was brought by the appellant, as owner of certain lands in King county, against the county commissioners of said county, to restrain them from establishing and using as a highway a strip of

land crossing said premises. In 1873 a petition was filed with the county commissioners of King county, praying that a road be opened from Alki Point to a point at or near Parmerlee's house, on the west side of the Duwamish river, in King county. Parmerlee's house is three or four miles south of said Alki Point. The commissioners ordered a survey, and the viewers, after reaching the point described in the petition, continued the survey a mile or two further south across the land of the appellant, and continued until they were stopped by another settler, who would not permit them to cross his land. The survey was then abandoned, and a report made and filed with the county commissioners. The board of county commissioners approved the survey of the road from Alki Point to the Parmerlee house. No reference was made to the continuation of the survey. There was a ferry on the Duwamish river just north of the Parmerlee house, and it would have been desirable to connect the road which was laid out with said ferry, thus securing connection with the public road lying on the east side of the Duwamish river and connecting with the ferry. There were settlers to the south of the south terminus of the road as described in the petition, and south of said ferry, on the west bank of the Duwamish river. McAllister, appellant's vendor, was one of these, and his north line was about 200 yards south of the Parmerlee house, the terminus of the road, according to the petition. The settlers in this neighborhood had cleared a way along the bank of the river, which they used in their communication with each other from as early a date as 1873, but there is no testimony that it was anything more than a trail or a foot path. In course of time, however, it was traveled by wheeled vehicles, and the different settlers fenced their lands and put in gates across this way,

and from that time, viz., about 1890, public work was performed on portions of this road, and it was passable for wagons and teams. But no work was ever done on the land in question prior to the purchase of the same by the appellant, who purchased the land in 1888. This work was done by the county in 1892, when the appellant was absent and the premises were vacated, and there is no testimony that he had any information that the work was being done. In fact he testifies positively to the contrary. The work consisted in placing some six or eight loads of gravel upon the road which crossed his land. No other work was done on this road or attempted until April, 1895. Shortly after this attempt by the county to work upon the road, this action was commenced to restrain the county from doing so. Upon the trial of the cause it was found by the court that by action of the county commissioners the road became a public highway, duly surveyed, laid out, opened and established, upon, over, and across the lands mentioned in the complaint, and it was also found that for more than seven years prior to the 6th day of March, 1890, and ever since, it has been continuously and uninterruptedly used, traveled, and worked and kept up at the expense of the public, as a county road and public highway, within said King county. As a conclusion of law, the court found that the road was a public highway, and that the officers of the county were entitled to enter upon, occupy, and work the same without any interference or hindrance from the plaintiff, and dissolved the temporary injunction which had theretofore been issued, and gave judgment against the plaintiff for costs.

Many cases are cited by both appellant and respondents in favor of their respective contentions in this case, although there does not seem to be so much contention about

what the law is as what are the facts which were elicited at the trial. The law governing prescriptive rights of the public in roads and highways was announced by this court in the case of *Shell v. Poulson,* 23 Wash. 535 (63 Pac. 204), in an opinion filed on the 14th of December, 1900. The authorities were investigated and the announcement made, in substance, that, to establish a highway by prescription there must be an actual public use, general, uninterrupted and continuous, under claim of right, for the term of years necessary to establish the right; and we cited *Shellhouse v. State,* 110 Ind. 509 (11 N. E. 484), where it is said: ·

"When the use is interrupted, prescription is annihilated and must begin again, . . . A highway, from its very nature, must be open to the public for use day and night, and any unambiguous act by the owner, such as erecting gates or bars over the highway, which evinces his intention to exclude the public from the uninterrupted use of the highway, destroys the prescriptive right, unless it had fully matured before it was interrupted."

Also, it was determined by the court in that case, to the effect that, before a highway could be established by prescription, the general public, under a claim of right, and not by mere permission of the owner, must have used some defined way, without interruption or substantial change, for twenty years or more; and that a gate erected across the way and maintained for, and kept closed at certain stated times during, a period of four years by the owner, evincing an intention to exclude the public from the uninterrupted use thereof, destroys any prescriptive right not already fully accrued. We think it is not necessary in this case to go again into an investigation of the authorities. This line of authorities, however, is not controverted by the respondents, but it is claimed that they have no application to the case at bar. This case dif-

fers from the *Shell Case, supra,* in this: that there was
more work done by the public on this road than there was
on the one under discussion in that case.    But the essen-
tial distinction claimed is that the gates, which were
maintained, were maintained for the purpose of keeping
the stock of the settlers from roaming off from the prem-
ises of their owners by getting onto the public highway.    It
is true that some of the settlers who maintained gates
stated that that was their object in placing the gates across
the road, but this appellant could not be bound by any
intention which actuated his neighbors.    It is insisted,
however, that John W. McAllister, who was a son of
appellant's grantor, and who lived with his father on
the premises, testified that that was the grantor's object
in erecting and maintaining the gates.    This is not strict-
ly according to the record.    In answer to the question,
"Do you know the reason why they were placed there?"
(referring to the gates), witness said, "Well, I think
they were put there to keep everybody's cattle on their
property, and for the accommodation of the people who
had to go through."    And he testifies in exactly the same
words on cross-examination.    So that, according to that
testimony, they were placed there for the accommodation
of the people who had to go through, and not alone for
the purpose of keeping cattle on the property of their
owners.

But, conceding the testimony to be as claimed by the
respondents, under the statute of limitations in relation
to real estate, as it then existed, the prescriptive right
could not have accrued at the time the land was pur-
chased by Megrath, although, as we indicated before, we
do not think that there is any substantial testimony show-
ing that the road was traveled as a public highway at so
early a date.    But, from the time Megrath became the

owner and possessor of the land, he certainly indicated to the public no intention to dedicate the road to public use, or to allow a prescriptive right to mature. The gravel was placed upon his road in his absence. He was not called upon to haul it away, nor was he called upon to exercise constant watchfulness lest the county should make a claim to a portion of his land. When he discovered that there was some intention on the part of the county to do so, he made known, by affirmative action, that he claimed the land, by placing notices upon the gates to the effect that it was private property, and demanding that the gates be shut. So we do not think, without specially reviewing the testimony, that it can be deduced from the evidence that the user was uninterrupted and continuous for a sufficient length of time, under any claimed theory of limitation, to establish a prescriptive right in favor of the public. It was not a free and untrammeled use, but was a use which was interrupted by unambiguous acts of ownership. Neither does the testimony show that the use was adverse. On the contrary, it does show that it was permissive and subordinate to private ownership.

So far as the question of establishment of the road by the county commissioners is concerned, we are clearly of the opinion that no legal road was established across appellant's premises. It is the petition which gives the county commissioners jurisdiction to act in the premises. They have no authority to call the road into existence by their own mandate. The law prescribes the manner in which matters of this kind are brought to their attention and submitted to their jurisdiction, and that is by a petition signed by the requisite number of qualified petitioners, intelligently describing the location of the road

petitioned for; and any act of the commissioners not based on such petition would be void.

Neither can the claim of the county be aided in this case by the act approved March 6, 1890 (Laws 1889-90, p. 733), entitled, "An act correcting informalities of record in the establishment of various public roads and highways in this state," for the reason that it is not shown by the testimony that this road had been worked and kept up at the expense of the public for a term of seven years prior to the 6th day of March, 1890, or for the term of seven years subsequent to that date.

The judgment is reversed and remanded, with instructions to proceed in accordance with this opinion.

REAVIS, C. J., and FULLERTON and ANDERS, JJ., concur.