[No. 25192. Department Two. July 12, 1934.]

LYDIA A. ELSTON *et al., Respondents,* v. KING COUNTY *et al., Appellants.*[1]

[1]Reported in 34 P. (2d) 906.

*Robert M. Burgunder* and *Arthur M. Hare* (*Herbert S. Little,* of counsel), for appellants.

*Scott & Simmons* (*Philip Tworoger, Frank S. Griffith,* and *Charles E. Congleton,* of counsel), for respondent Elston.

*Charles E. Congleton,* for respondents Hughes.

HOLCOMB, J.—On October 13, 1931, a petition was filed with the board of county commissioners of King

county for the improvement of a road to be known as Donohue road No. 25 in King county by paving for a distance of six and three-fourths miles, more or less. The petition alleged that the improvement was necessary and conducive to the public convenience and welfare and a benefit to the residents of the county. It prayed for the inclusion of lands that would be benefited by the improvement within a radius of two miles of any given point on the center line of the improvement. It represented that the petitioners were the owners of at least fifty-one per cent of the lineal frontage of the lots or lands abutting upon the proposed improvements; that, as appeared by the assessment rolls of King county, petitioners owned property which would be particularly benefited, representing in value not less than ten thousand dollars for each mile of the improvement petitioned for.

Upon the filing of the petition and a sufficient bond as required by the law, the commissioners caused notice of a proposed hearing thereon to be published in the official county newspaper for a period of three weeks, commencing October 16, 1931, and ending October 30, 1931, giving notice that the board had fixed Monday, November 2, 1931, at ten o'clock a. m., in the board rooms of the county-city building, as the time and place for the hearing and consideration of the petition and all matters in relation thereto. On November 2, 1931, before the hearing, the county engineer delivered to and filed with the board of county commissioners a statement in accordance with chapter 271, Laws of 1927, p. 627, § 8 (Rem. Rev. Stat., § 6605), upon the proposed improvement to be known as Donohue road No. 25, to the effect that the project was feasible; that the paving should be twenty feet in width; that the estimated cost of the improvement would be $175,000 for its length of six and three-

fourths miles. There is no evidence of any protest, either orally or in writing, against the sufficiency of the petition or against the proposed improvement up to November 2, 1931.

The commissioners adopted a resolution on that date ordering that the improvement be made as petitioned for, to be known as Donohue road No. 25. On January 11, 1932, a resolution was adopted appointing appraisers, who qualified according to law. On January 18, 1932, the county engineer, complying with instructions from the board, submitted detailed plans and specifications for the work together with an estimate of the cost of construction, namely: $157,000, and additional expenses in the sum of $32,000, totaling $189,000. Shortly after January 18, 1932, bids for the construction of Donohue road No. 25 were called for, and on February 15, 1932, a contract was let for the total sum of $149,003.05. The work was completed on August 15, 1932.

On the same day the petition for the improvement was filed, October 13, 1931, it had been referred to and checked by the county engineer, who certified to the board that the petition for the improvement bore the signatures of owners of 52.8 per cent of the lineal frontage bordering on the improvement; that the property would be particularly benefited to the value of $18,000 per mile; and property within the probable improvement boundary would be benefited to the value of $19,000 per mile.

On February 13, 1932, a written protest, dated February 11, was filed with the board, representing a number of unnamed property owners along the improvement route, by George L. Coulter as chairman, on the ground that the assessments would amount practically to confiscation of their property. On February 15, after receiving that protest and without fur-

ther hearing, the commissioners let a contract for the paving of the highway. Written objections were also prepared by several different owners along the route of the improvement, among others being respondent, on behalf of herself and one hundred four land owners along the improvement.

During the trial of the case, Charles M. Hughes and Robert Hughes, who were represented by different counsel than those of respondent, who owned separate tracts of land affected by the improvement, moved in the lower court that they be considered as parties "similarly situated" with respondent. Their separate motions were argued and granted by the trial court on February 13, 1934, by a definite order that they be allowed to participate in the benefits of whatever decree should be entered. They will therefore be considered as "similarly situated," in addition to the one hundred four parties represented by respondent.

The date fixed by the commissioners for the second hearing upon the report of the appraisers and for determining the assessments and benefits was June 27, 1932. Several counsel, including counsel for respondent, appeared at the time and place fixed. Hearing of the objections as filed was denied by the commissioners. After being advised by the county attorney that a hearing should be granted, the matter was continued to August 1, 1932, when a further and final hearing was held.

At the conclusion of that hearing, the commissioners approved, without any change, the assessment roll as presented. This suit was promptly thereupon instituted by respondent. Judgment was granted by the trial court setting aside the assessments, permanently enjoining collections thereof, and quieting title of all proprietors as to the cloud created by the assessment lien which had been entered.

It may be further noted at this place that, of the total cost of the improvement, $195,505.80, one-half of which was to be paid by the private owners by a number of assessments against the property in the district, $26,877.24 has already been paid into the special fund created for the improvement district. Of this, $16,-943.71 was paid by King county out of its road and bridge fund. The balance of $9,933.53 has been paid by private owners. Of the 1,662 separate descriptions and property upon which payment has already been made, only 133 were paid under protest.

On appeal, the errors assigned by appellants are (1) in refusing to dismiss the action; (2) in refusing to limit the relief granted merely to property and persons described in the amended complaint; (3) in entering judgment and decree in favor of respondent and against appellants; (4) in including in the judgment and decree, a decree that all actions taken by the county authorities in attempting to establish Donohue road No. 25 and in attempting to levy assessments for the improvement of First avenue south, are void, and cancelling all assessments; and (5) in filing and entering the order filed in this action on February 16, 1934.

Although many contentions were made and elaborately argued by counsel for the parties hereto, our determination upon the sufficiency of the petition for the improvement of Donohue road No. 25 will render discussion unnecessary and eliminate several of the contentions of error.

There were no arbitrary steps taken by the commissioners after the initiating of the proceeding. In all other respects, the Donohue road law as now codified in Rem. Rev. Stat., §§ 6604, 6605, 6611 and 6616, was literally complied with. According to the opinion of the trial court, there were no such excessive valuations or assessments laid upon the property

owners affected as would indicate that the authorities acted fraudulently, arbitrarily or upon a fundamentally wrong basis. In that respect, the commissioners have a very broad discretion. *Adams County v. Scott,* 117 Wash. 85, 200 Pac. 1112.

It is correct that the petition and finding of the board of county commissioners showed that the owners of 52.8 per cent of the lineal frontage had signed the petition. There is a presumption of the sufficiency of the petition after such finding by the board (44 C. J. 233), but that presumption is not conclusive.

Rem. Rev. Stat., § 6603, which is part of the Donohue road law, makes it mandatory that applications for such improvement shall be made to the commissioners of the county, signed by the owners of at least fifty-one per cent of the lineal frontage of the lots or lands abutting upon the proposed improvement, which shall appear by the *assessment rolls* of the county, to own property which will be particularly benefited, representing in value not less than ten thousand dollars for each mile of the improvement petitioned for.

The county commissioners had no power, of themselves, to initiate an improvement under the Donohue road law. Their power is granted by that act and strictly prescribed. Unless a valid and sufficient petition for the initiation of the improvement were filed with the board, it had no power to act. *Megrath v. Nickerson,* 24 Wash. 235, 64 Pac. 163; *Seattle & Puget Sound Packing Co. v. Seattle,* 51 Wash. 49, 97 Pac. 1093; *Ruffin v. Sewell,* 134 Wash. 208, 235 Pac. 31.

It was proven at the trial in this case that one of the owners of frontage along the improvement, the Seattle-Tacoma Land Company, signed the petition by its vice-president without any proof of authority on the part of the board of trustees of that company.

The record also shows that the person who signed as vice-president, Miss Rhea Culver, was a mere employee, and not a trustee, nor even a stockholder. The frontage represented to be owned by it was such that, if the frontage credited to the Seattle-Tacoma Land Company were deducted, then the frontage on the petition would be only 24,864 feet out of the total of 68,849 feet. Hence, this frontage, if deducted, would leave lineal frontage represented by the petition of only 49 per cent of the total lineal frontage. It was also shown that the legal title to some land was held by the Seattle Title Trust Company for the use and benefit of the Seattle Ocean View Syndicate, who signed the petition purporting to be the owner of the real and equitable title therein. It is obvious that, if these signatures were not valid and should not have been counted, there was considerably less than 51 per cent of the lineal frontage of the lots and lands abutting upon the proposed improvement as required by § 6603, *supra*.

We have held that, since the holder of an executory contract for the purchase of land has neither legal nor equitable title and is therefore not a freeholder, such holder of title is not entitled to be counted on a petition for the vacation of a county highway under Rem. Rev. Stat., § 6503. *Daniels v. Fossas,* 152 Wash. 516, 278 Pac. 412.

Furthermore, the signatures of the two corporations by their vice-president and president, respectively, are not shown to have been authorized by any resolution of the board of trustees of the corporations.

Rem. Rev. Stat., § 3812, provides:

"The corporate powers of a corporation shall be exercised by a board of not less than two trustees, who shall be stockholders in the company, and at least one of whom shall be a resident of the state of Washington, . . . ."

The general rule stated in 25 R. C. L. 156 is:

"Where the owner of abutting property is a corporation, it has been held that the general manager thereof cannot legally sign a petition for a local improvement, as the act is one which falls within the powers of the board of directors."

The trial court found that a fair preponderance of the evidence establishes that the petition upon which all acts were taken establishing Donohue road No. 25 did not have an adequate number of valid signatures, with which finding we are compelled to agree.

It appears, however, that the two corporations above mentioned considered that the improvement would be of benefit to their lands, have never revoked the signatures to the petition for the improvement, nor repudiated the action, nor made any protest against the proceeding in any way, and have paid some of the assessments. Since they have not taken any such steps, they and their lands must be held to be bound by the assessments. Under these circumstances, they must be held to be estopped from contesting the assessments.

We also held in *Ruffin v. Sewell, supra:*

"This being a direct attack, and the language of the statute being plain and unambiguous, we must hold that a petition, signed as the statute requires, is necessary to give the county commissioners jurisdiction, and therefore any subsequent finding of fact by the county commissioners was made without jurisdiction and cannot be considered in aid of jurisdiction."

The certification by the county engineer as to the sufficiency of the petition respecting the lineal frontage and ownerships thereof, which was requested by the board merely for convenience, and the resolution of the commissioners to the same effect, are not conclusive, and may be shown to be untrue by competent evidence.

*Mulligan v. Smith,* 59 Cal. 206, is a leading case upon this question. In that case, it was held that, if the law has not been strictly complied with, the proceeding is a nullity, and the adjudication gives it no additional validity. It was also there said (p. 236):

"And when the requirement is, that an improvement *shall be asked for or assented to by a majority,* or some other proportion of those who would be taxed, a want of compliance with that requirement is fatal to any stage of the proceedings. 'And any decision or certificate of the proper authorities, that the requisite application or consent had been made, would not be conclusive, but might be disproved.' [Citing texts and cases]"

The reasoning and result in that case were unqualifiedly approved by the supreme court of the United States, in a proceeding under the same statute, in *Zeigler v. Hopkins,* 117 U. S. 683, 6 S. Ct. 919. That court also there held that anyone affected by the initiation of the improvement and assessing benefits thereunder, was not estopped by the acceptance of the petition by the officials and their certificate upon it or by the judgment of the county court (which court would be the same as our board of commissioners) confirming their report, from showing that the petition for the improvement was not signed by the owners of the requisite amount of frontage.

In this state, we adhere to no such Procrustean rule of jurisdiction as obtains in California, which would upset the entire improvement assessments even as to those owners affected by the improvement who acquiesced therein, paid assessments, or otherwise ratified the proceedings; but there must be substantial compliance with § 6603, *supra.*

We recognized the jurisdictional rule in *Carlson v. Kitsap County,* 124 Wash. 155, 213 Pac. 930, which was a proceeding which did not originate under the Dono-

hue road law. We there held that property owners who failed to appear and object to an assessment of their property for a county road, and stood by permitting costs to be incurred and bonds and warrants to be issued and pass into the hands of innocent purchasers, and who enjoyed the benefits for five years, are estopped from asserting want of jurisdiction because the proceedings were not initiated by a petition of the owners of two-thirds of the lineal frontage thereon.

Appellants' endeavor to bring this case within the principles announced in the *Carlson* case, *supra,* and *Desimone v. Shields,* 152 Wash. 353, 277 Pac. 829. Those cases have no application to the situation in the instant case.

In the *Carlson* case, *supra,* it appears that the parties complaining might have made all of their objections before the commissioners upon the hearing had before confirmation of the assessment roll; and that thereafter they stood by, permitted a contract to be let, the money to be expended, the bonds or warrants to be issued and to pass into the hands of innocent purchasers, enjoying the full benefits of the improvement for more than five years, before asserting any defect in the proceedings or taking any action.

In the *Desimone* case, *supra,* the trial court found that the evidence disclosed that the plaintiffs had, by their own conduct, placed themselves in a position where in equity they could not invoke the question of jurisdiction, and this court sustained the trial court.

The same principle would apply to the Seattle-Tacoma Land Company, the Seattle Ocean View Syndicate and the Seattle Title Trust Company, as legal or beneficial owners of several of the tracts assessed in the district involved herein, and others similarly situated with them, to estop them in equity and good conscience from suing for any relief under the im-

provement on the assessments. *North American Lumber Co. v. Blaine,* 89 Wash. 366, 154 Pac. 446.

In the case at bar, respondents did attempt to have their objections to the validity of the signatures to the petition heard in the second hearing before the commissioners on the assessment roll on August 1, 1932, but were denied the right. As stated before, that hearing was limited strictly to the assessments and benefits under the proposed improvement.

Respondent and those represented by her and all others similarly situated who have not slept too long upon their rights, or have not ratified the proceeding by paying assessments without protest, cannot be estopped to attack the validity of the petition upon jurisdictional grounds. That principle was announced and approved in the *Seattle & Puget Sound Packing Co.* case, *supra.* In that case, Rudkin, J., said (after citing previous cases there relied upon):

"At the same time it is conceded in all these cases that objections going to the jurisdiction of the city council are not waived. [Citing cases]."

In one important respect, however, we consider the judgment of the trial court too sweeping.

In her amended complaint, respondent alleged that she brought the action in her own name and in behalf of other persons similarly situated who own property within the district and abutting upon the road which the county commissioners wrongfully ordered and caused to be improved by paving; that exhibit "A" contains a list of the names and descriptions of property owned by protestants in whose behalf this action is prosecuted, which exhibit is referred to and made a part of the complaint; that respondent and such other persons have been wrongfully assessed, and if appellants are permitted to proceed with the collection of such assessment, they will be subjected to wrongful

and unnecessary expense. The attached exhibit names one hundred four protestants and land owners with the descriptions of their property in whose behalf, besides herself, she alleges that she is suing.

The case was tried in the lower court on the issues framed by the amended complaint and the answer of appellants. The judgment of the trial court granted relief by cancelling the purported assessments as to respondent and all those listed in her complaint on whose behalf she alleged she was bringing action, and quieting the cloud of title to their lands ''and to the property of all others similarly situated.''

It is not justice nor equity to invalidate all of the assessments within the improvement district when a great many had not only accepted the benefits of the improvement, but paid assessments thereon.

Respondent relies upon Rem. Rev. Stat., § 190:

''When the question is one of common or general interest to many persons,. or where the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole.''

See, also, *Perkins & Co. v. Diking District No. 3 of Island County,* 162 Wash. 227, 298 Pac. 462, in which this court upheld the right of one suing on behalf of numerous owners to maintain an action in equity against the diking district.

However, it cannot be held that the quoted statute and the above cited case means to include all people who may have been affected by the proceedings for the improvement when they have accepted the benefits and made no complaint. They are not ''similarly situated.'' Their situation is entirely dissimilar. While they might have had the right to sue or might have joined in the action by the present respondent, they did not see fit to do so. All except those enumerated in

the list attached to the amended complaint of respondent and the other two owners mentioned as having been specifically included by order of the court as "similarly situated," should be considered as estopped to secure any relief in such action. In all other respects, except that last mentioned, the decree must be affirmed.

Appellants, having obtained a more favorable judgment in this court, will recover costs of appeal.

BEALS, C. J., TOLMAN, BLAKE, and GERAGHTY, JJ., concur.