[No. 42060.    En Banc.    April 27, 1972.]

*In the Matter of the Application of* JAMES S. JOHNSON
*et al., Appellants,* v. FRANK MOORE, *Respondent.*

*John M. Darrah* and *Kenneth Kanev,* for appellants.

*A. L. Newbould* and *Charles R. Nelson,* for respondent.

*Ronald J. Meltzer* and *Robert Czeisler,* amici curiae.

FINLEY, J.—In this case the plaintiffs appeal from the superior court's dismissal of their class action seeking to

terminate the alleged practice of holding individuals in the Seattle city jail "on suspicion" of various crimes without bringing them promptly before a magistrate.

Appellants were held "on suspicion" for varying lengths of time in the city of Seattle jail without being taken before a magistrate for arraignment and setting of bail. Appellant Johnson was allegedly held "on suspicion of forgery" for approximately 116 hours; appellant Bobala "on suspicion of narcotics" for approximately 90 hours; and appellant James "on suspicion of being a fugitive from justice" for an undetermined period of time. Appellants initiated this class action on behalf of themselves and all other persons arrested and held in the city jail without charge. They sought relief under several procedural-remedial categories: —(1) habeas corpus, (2) declaratory judgment, (3) preliminary and permanent injunction, and (4) mandamus. The petitions for writs of habeas corpus were denied by the trial court on June 15, 1970, since by that date the appellants had in fact been charged with the crimes for which they were held on suspicion. On July 16, 1970, appellants moved for an order determining the appropriateness of the class which they sought to represent. On September 18, 1970, the trial court declared the action inappropriate as a class action and dismissed it. Plaintiffs appeal from that dismissal.

■ The appropriateness of the instant class action must be determined by reference to CR 23, which is an exact counterpart of Rule 23 of the Federal Rules of Civil Procedure. To be maintainable under CR 23(a), a class action must first meet certain prerequisites:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The adequacy of the size of the class was not questioned by

the trial court in its memorandum decision holding the action inappropriate on September 1, 1970; the constant expansion and contraction of the class renders joinder of all its members sufficiently difficult to comply with CR 23(a)(1). *See Adderly v. Wainwright,* 46 F.R.D. 97 (M.D. Fla. 1968). Nor can there be any doubt that the claims and defenses of the representatives are typical of those of the class which they represent, as required by CR 23(a)(3). The ability of appellants fairly and adequately to represent the class and thereby meet the condition of CR 23(a)(4) may be subject to some doubt because appellants some time ago were charged with specific criminal offenses, and they are no longer being held in the city jails without charges against them. *See Dale v. Hahn,* 311 F. Supp. 1293 (S.D. N.Y. 1970). But in view of (1) the absence of consideration of this issue by the trial court in its memorandum decision, (2) the fact that the police department can and probably will remove any individual's immediate interest in the outcome of such a case simply by charging him with a crime fairly promptly when actually faced with a lawsuit challenging the practice of holding persons "on suspicion," and (3) the obvious initial and continuing competence of the Seattle Public Defender's Office in its representation of appellants and the class which they represent, we can only conclude that the action of appellants will fairly and adequately protect the interests of their class, as required by CR 23(a)(4).

The crucial issue presented on this appeal is whether the class action prerequisite of CR 23(a)(2) is met. Are there questions of law or fact common to the class? The answer to this question is critical not only in determining whether the CR 23(a) prerequisites to a class action exist but also in deciding whether the class action is maintainable under CR 23(b), which sets out three preconditions for the maintenance of a class action, at least one of which must be met. For the instant class action, the applicable precondition is CR 23(b)(2), which provides that:

An action may be maintained as a class action if the

prerequisites of subdivision (a) are satisfied, and in addition:

. . .

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . .

In effect, this section, as well as CR 23(a)(2), requires a finding that there are questions of law or fact common to the class. *See* 3B J. Moore, Federal Practice § 23.06-1 (2d ed. 1969).

The trial court, in its memorandum decision of September 1, 1970, concluded that

since the facts and circumstances surrounding the detention of each member of the class which plaintiffs represent are different, and these differences are critical to the determination of whether constitutional rights were abridged, the test of CR 23 is not satisfied; there are no facts "common to the members of the class [that] predominate over any questions affecting only individual members." [CR 23(b)(3)]

This conclusion appears to have been reached on the assumption that the proceedings before the trial court were in the nature of a habeas corpus class action. Reliance on this assumption precluded the court from considering whether the action met the requirements of CR 23(b)(2), *supra,* and precipitated the trial court's conclusion that the only possible justification for the action was to be found in CR 23(b)(3), which requires a finding that

questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In addition to necessitating reliance on a section of CR 23(b) which is arguably more exacting in its requirements than CR 23(b)(2) (CR 23(b)(3) requires a finding that a class action is superior to other available forms of

relief, a particularly difficult conclusion to reach in the case of a habeas corpus action), a class action habeas corpus proceeding, by virtue of the very nature of the relief sought, puts in issue the particular facts and circumstances of the detentions of the class members. A class action injunction proceeding, on the other hand, places in issue only the constitutionality of the presumably unvarying standards applied in holding members of the class "on suspicion" of various charges without bringing them before a magistrate.

■ The trial court's characterization of this action as one seeking habeas corpus relief was erroneous. The petitions for writs of habeas corpus were denied on June 15, 1970; appellants' motion for an order determining the appropriateness of the class which they sought to represent was not made until July 16, 1970. While we do not decide whether this class action would be inappropriate if brought solely to obtain habeas corpus relief, we do conclude that as an action for injunctive and declaratory relief it is an appropriate class action and was incorrectly dismissed. The fundamental question presented is whether the police department should be restrained from holding members of the class an unreasonable or unnecessary amount of time without bail. Whether the reasonableness or necessity of a period of detention is determined with reference to the facts of each individual's case, or whether unvarying standards can be applied to all cases, as appellants suggest, the legal principles under which the reasonableness of a detention is determined are common to all members of the class. A class action is therefore appropriate, since there are issues of law common to all members of the class as required by CR 23(a)(2), and the respondent has "acted or refused to act on grounds generally applicable to the class." CR 23(b)(2).

■ A class action is not precluded by the possibility that individual issues may predominate once the general illegality of the questioned practice is determined. *See Weiss v. Tenney Corp.*, 47 F.R.D. 283 (S.D.N.Y. 1969). In

*Escalera v. New York City Housing Auth.*, 425 F.2d 853 (2d Cir. 1970), the court held that where procedures used by the New York City Housing Authority in dealing with tenants were identical, there were common questions of law and fact that would support a class action, even though the facts leading to housing authority action in the case of each plaintiff were different. And it has been held on several occasions that Negro applicants for admission to schools attended by white students may bring a class action to obtain admission on behalf of all others similarly situated. *Gantt v. Clemson Agricultural College*, 320 F.2d 611 (4th Cir. 1963), *cert. denied*, 375 U.S. 814, 11 L. Ed. 2d 49, 84 S. Ct. 46 (1963); *Norwalk CORE v. Norwalk Bd. of Educ.*, 298 F. Supp. 210 (D. Conn. 1968). The fact that some members of such a broadly defined class might not be entitled to enter the schools even in the absence of racial discrimination against them, or the possibility that some individuals held on suspicion of various crimes in the Seattle city jails might not be entitled to release under constitutional standards of reasonable detention, does not bar a class action. This principle is particularly clear where the class action is sought, not to raise many different factual grievances (as in a claim for habeas corpus relief), but to put the court in a position to render broad remedial relief for allegedly unconstitutional action by means of declaratory judgment or injunction, as in the instant case. *Hicks v. Crown-Zellerbach Corp.*, 49 F.R.D. 184 (E.D. La. 1968); *Carr v. Conoco Plastics, Inc.*, 295 F. Supp. 1281 (N.D. Miss. 1969), *aff'd*, 423 F.2d 57 (5th Cir. 1970).

Accordingly, we conclude that the class sought to be represented by appellants is an appropriate one under CR 23. The trial court's dismissal of this action is reversed, and the cause is remanded for further proceedings consistent with this opinion.

HAMILTON, C.J., ROSELLINI, HUNTER, and NEILL, JJ., and RYAN, J. Pro Tem., concur.

NEILL, J. (special concurrence)—I have signed the ma-

jority opinion but add the following observations. As I understand it, the petitioners' assertion is that they and others similarly situated are unconstitutionally subjected to "open" or "on suspicion" bookings, applied without reasonable standards, whereby they suffer unreasonable delay in obtaining knowledge of the charges against them by being brought before a magistrate. That claim is a common denominator among the members of the class so affected.

The common ground as to the asserted practice is not, in my view, negated by any distinctions among individual prisoners based upon whether they would otherwise be entitled to habeas corpus relief, or would be subject to such practice under proper standards, or would for their own purposes desire to waive more formal and informative booking procedure. Such individual rights and interests are not precluded by or adverse to a determination of the general and basic questions raised in this action. The fact that some prisoners may ultimately be determined to be properly subject to "open" booking merely suggests a limit to the definition of those "similarly situated."

The claims here asserted are, by nature, indigenous to the situation which petitioners' ask the courts to scrutinize. Further, the nature of the claims asserted is basic and is such that the scope of any relief granted is ascertainable in one action for all members of the "similarly situated" class. In my view this case is distinct from the situation in which money damages are sought; such cases by nature involve disparate proofs and possible defenses. *See, e.g., Puget Sound Alumni of Kappa Sigma, Inc. v. Seattle,* 70 Wn.2d 222, 422 P.2d 799 (1967). Nor is the decision in this case contrary to the position of Justice Stafford in his dissent to *Dore v. Kinnear,* 79 Wn.2d 755, 489 P.2d 898 (1971), in which I concurred. Our view in that case had reference to a claimed CR 23(b)(3) class action which had never been perfected and in which the proponents' interests were antagonistic to those of other "members" of the purported "class." The case at bench involves no such antagonism

over the claims asserted and no question as to whether petitioners have followed relevant CR 23 procedures.

HALE, J. (dissenting)—I think it basic to the idea of due process of law that one compelled to defend himself in court not only be apprised of the nature of the claim and the facts upon which it depends but who is suing him. A person dragooned into court to wage his defense is entitled to know who are the real parties in interest against him, who it is that is putting him to the travail and costs of defending himself, and who will benefit by the judgment or decree. In a true class action, one's adversaries are readily identifiable, and there is no mystery as to how the judgment or decree will operate.

Here, however, as I see it, the claim of representation is spurious; there is no recognizable juridical class. Except for some vague and illusory concepts of taking a decree in the public interest on behalf of the public generally and making the chief of police toe the mark, I find nothing about the case that enables one to reach a conclusion that the plaintiffs are bringing this action for anyone except themselves individually—which, of course, they have every right to do. Theirs is the extravagant claim of presuming to speak and act not only for everyone in the jail but those entering and leaving it. If this be a genuine action, small wonder that the courts are plagued with them.

We have but one issue before us, *i.e.,* Is this a true class action? The court holds that the three actual parties plaintiff who signed and verified the complaint are maintaining this suit not only for themselves, but, by virtual representation, for all other inmates of the city jail who have not been charged or taken to court. Plaintiffs also presume, as I see it, to represent all future inmates of city jail during future intervals prior to the filing of charges, referrals to judicial officers, and releases from custody. Other than these vague concepts, the record shows nothing, in my view, that could be said to amount to a class sui juris. Application of even the most extravagant concepts of a

juridical class will fail to locate one in this case, for at best we have no more than a constantly shifting group of people who enter the supposed class upon arrest and leave it as soon as they are charged with an offense and are taken before a judicial officer.

Curiously, the three actual plaintiffs would not belong to the same class juridically because their situations differ remarkably.

Plaintiff Johnson, at the time of signing the complaint, says he was being held in the Seattle city jail on suspicion of forgery and had been held there for about 116 hours without being taken before a magistrate for arraignment. Plaintiff Bobala says he was held on suspicion of violating the laws relating to narcotics for 90 hours. Plaintiff James says he was held on suspicion of being a fugitive from justice for 168 hours without being taken before a magistrate. I would not question the right of each plaintiff to seek his remedy individually by habeas corpus or other extraordinary writ, but this they have done by actual joinder. I doubt whether the identical relief can or should be granted each party after trial upon the merits.

One would be hard put to more loosely describe the nature of the claim and the parties bringing it. Defendant Moore, plaintiffs allege individually and jointly, as acting chief of police of the city of Seattle, was responsible for their illegal incarceration. Plaintiffs demand (1) a writ of habeas corpus; (2) declaratory judgment relief; (3) preliminary and permanent injunctions against the defendant acting chief of police; and (4) writs of mandamus not only jointly and severally but also on behalf of a class of individuals whom they claim to represent and for whom, they say, they are maintaining this action. Employing language reminiscent of that found in an antitrust suit or one brought for redress for unlawful restraint of trade, plaintiffs describe the class in their complaint as

all persons incarcerated in the jail of the City of Seattle, Washington, who have been subjected to the practices employed by the defendant in a consistent, concerted and repeated course of conduct, complained of . . .

and go on to complain of consistent, concerted and repeated course of conduct "directed toward the plaintiffs and the class." On behalf of themselves and all others of their class, plaintiffs claim that the chief of police has been arresting and imprisoning them and the class without charging the plaintiffs *and the class* with a crime; and failing to bring the "plaintiffs and class before a magistrate, without unnecessary delay, as required by law."

This combined petition for writ of habeas corpus, complaint for declaratory judgment, application for preliminary injunction and permanent injunction, and petition for writ of mandate goes on to demand that the plaintiffs be set free or otherwise dealt with according to law; that the chief of police desist from "detaining plaintiffs and the class for an unreasonable period of time on 'suspicion' and without arraignment;" for an injunction against continuing these practices; and for a mandate to take "plaintiffs and members of the class forthwith before a magistrate following arrest . . . but in no event later than noon on the court day next following the day of arrest;" and

> For an order requiring Frank Moore and his employees and agents to book members of the class for the crime for which they were arrested and not on an "open" or "suspicion" category.

Just how the chief or his successor will go about booking "members of the class for the crime for which they were arrested" is not made clear.

No one seriously disputes the proposition that plaintiffs cannot be lawfully held in police custody without formal charges, and that the constitutions require reasonably early reference to a judicial officer after arrest and judicial consideration of admission to bail, nor that habeas corpus, ubiquitous, perennial and eternal, is available to anyone in custody. But all of the issues raised by the three named plaintiffs can be and were reached by habeas corpus and perhaps mandamus or some other form of extraordinary remedy sought individually or by ready joinder. The only

matter before us is whether the trial court properly decided that this was not a true class action and accordingly dismissed it as a class action leaving the plaintiffs to their respective individual remedies, separately or by joinder.

Common sense, I think, vindicates the trial judge's ruling. First, the idea of a class action is quite pointless when all of the parties directly concerned may readily join in the action or sue separately. No barriers whatever appear in this record against the joinder of other occupants of the Seattle city jail. All of them could readily join as parties plaintiff simply by verifying the complaint, intervening separately or bringing separate actions. The trial court's judgment of dismissal of the class action deprived neither the actual plaintiffs nor any other occupants of the jail of any rights or remedies not already available. Any one of the class whom the plaintiffs purport to represent if in jail at the time could readily have sought the identical relief and asserted the same remedies which plaintiffs are seeking individually.

On its face, the complaint brought as it is under CR 23, demonstrates this is not a true class action. CR 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The first requisite—practicability—is wanting here. There is no showing that it would be impracticable to join all consenting occupants of the city jail at the time of filing the complaint, and thus one of the fundamental reasons for allowing class action at all did not exist. For that reason alone, the trial court's ruling should be sustained.

What are the essentials of a class that can be judicially deemed sui juris en masse? Most of the essentials (see 59

Am. Jur. 2d *Parties* §§ 56-75 (1971)) are set forth in CR 23 and, as amplified judicially, are:

1. The class, as just observed, must be so numerous that joinder of all members is impracticable. In the instant case, all purported members are as available as it is possible to make them—in jail, under the same roof—except for those to be arrested in the future.

2. There must be a community of interest, *i.e.*, questions of law or fact common to the class. Whatever claims plaintiffs in the present case have in common are overshadowed by the differences not only among themselves but with other members of the purported class. Plaintiffs are held in jail on widely differing accusations for widely differing times. Unnamed members of this so-called class may be in custody under such varying accusations as drunk driving, murder, kidnapping for ransom, armed robbery, embezzlement, etc. Some may be undisclosed juveniles whose identities and true ages are under investigation. Some may have counsel whose initial efforts on behalf of their clients is to delay the filing of public charges, either in the interests of persuading the prosecution that the client is innocent and should not be charged at all or that investigation will establish a lesser or different offense than the one for which the arrest was made. The pleadings alone show lack of that community of interest requisite to a true class action.

3. The claims or defenses of the parties bringing or defending the action must be typical of all members of the class. Obviously, the claims of the three signatory plaintiffs here are not and cannot be typical of the claims of all inmates of the city jail awaiting the filing of charges and referral to a judicial officer. The disparate nature of such claims and circumstances is contemplated by JCrR 2.03. Under that rule—that arresting officers are to take persons who cannot make bail or whose alleged offense is unbailable before a judge without unnecessary delay—the term "directly and without delay" means as soon as reasonably practicable. That rule, adopted by this court after careful consideration, deliberately avoided prescribing a time limit

in terms of hours, minutes and days in fixing the minimum time.

4. The actual parties must fairly and adequately protect the interests of the class. All persons in the Seattle city jail held without the filing of formal charges in court would not be fairly and adequately represented by these three plaintiffs, nor in any suit short of individual claims separately urged. Some occupants of the jail may have employed counsel whose first thought conceivably could have been to prevent having the police accusations officially spread upon the court records and thus put into the public domain; others may be mentally deranged but, nevertheless, under arrest for crimes for which they were not legally responsible; others may be in custody on fugitive warrants from other states or countries awaiting documentation of extradition papers; some may have been suspected but unadmitted juveniles whose case will ultimately be filed in the juvenile department of the superior court; and others may be held under such widely disparate conditions, circumstances and hopes as to resist being herded into court along with other members of the class plaintiffs claim to represent. It is quite likely that a number of the jail occupants resent and would reject plaintiffs' offers on their behalf and deem it officious intermeddling and do not welcome a suit on their behalf to compel the chief of police to see to it that charges are filed against them in open court instanter.

5. Finally, and of overriding import, the members of the class must be readily ascertainable. Here we have what is probably the most fundamental of all the essentials, for individual members of the class must be readily identifiable so that they individually can either claim under or will be bound by a judgment. Unless this basic requisite exists, the suit is a spurious class action and the class limited to those who actually by joinder or intervention become parties. *Rath v. Armour & Co.*, 136 N.W.2d 142 (N.D. 1965).

To be one of a readily ascertainable class, therefore, it must appear that one would seek the remedy demanded, would enforce it if obtained and, without having sought it,

not be prejudiced by having others obtain the relief demanded.

Members of the class should have a right to insist that the interests to be preserved by the named parties and those of the class are so nearly identical that the motives for obtaining the remedy will be identical or nearly so with all members of the class. *Industrial Generating Co. v. Jenkins,* 410 S.W.2d 658 (Tex. Civ. App. 1966); *County of Los Angeles v. Winans,* 13 Cal. App. 234, 109 P. 640 (1910).

Nor can there be a class action on behalf of persons whose identities as members of a class cannot be established at the time the relief was sought. As soon as a charge is filed against the purported class member and he is taken before a judicial officer, he leaves the class and cannot claim relief according to the remedy granted to the members of his former juridical class. Unlike such cases where minority stockholders, members of an unincorporated association, bondholders, taxpayers similarly affected by a taxing measure, trust beneficiaries and even prisoners awaiting execution (59 Am. Jur. 2d *Parties* § 75 (1971)), who may be deemed members of a class in a given instance, here there is no survival of rights from those leaving the class to those entering it. Where a true class may survive changes in actual membership by assignment, transfer, sale or operation of law, here there can be no survival of such rights because there are no derivative rights passing from one jail inmate to another. For example, a stockholder, landowner or taxpayer or trust beneficiary may by transfer of the res accord derivative rights to his successor in interest and his successor thereby acquire the same derivative rights, and a true class may arise in such instance by derivation. But here it is quite unlikely that an occupant of the city jail has alienable rights which he can transfer to a succeeding occupant of his jail cell. Those who, as successors in interest or by derivation as a class, might claim a share in the relief obtained in a judgment or decree do so not as general members of the public but because of their rights to and interests in the same thing or remedies at the

same time arising through common interests and the common right of recovery upon the same facts. *Davies v. Columbia Gas & Elec. Corp.*, 151 Ohio St. 417, 86 N.E.2d 603 (1949); *Wolf v. Bennett,* 118 Ind. App. 567, 82 N.E.2d 262 (1948).

Accordingly, in *Weaver v. Pasadena Tournament of Roses Ass'n,* 32 Cal. 2d 833, 198 P.2d 514 (1948), the Supreme Court of California held that all ticket holders to the Rose Bowl game who had been wrongfully refused admission did not constitute a class of parties plaintiff for whom a few could sue on behalf of the many to recover a statutory penalty. Despite what might appear to be a definite community of interest in the remedy, and a readily ascertainable property interest arising by ownership of a Rose Bowl ticket, and the denial of admission to the game, the court found there was no class by virtual representation for which an action could be brought. The claims had to be individually enforced by those claiming to have been wronged, although as a group this might involve several thousand individual ticket holders. In summarizing, the court said, at page 841, "So the fact that 'numerous parties' have separate and distinct claims against the same person or persons will not alone suffice to sustain a representative suit where there is no community of interest." *See, also, Gerhard v. Stephens,* 68 Cal. 2d 864, 69 Cal. Rptr. 612, 442 P.2d 692 (1968).

To be a true class action, then, the right to be enforced must be joint, common, derivative or secondary so that the judgment obtained will similarly affect all members of the class. *Salt Lake City v. Utah Lake Farmers Ass'n,* 4 Utah 2d 14, 286 P.2d 773 (1955). Thus, where plaintiffs as members of a committee which had sold dairy products to the defendant corporation brought suit to recover the purchase price for goods sold and delivered and to recover punitive damages as well on behalf of plaintiffs and others who had sold, delivered to and were unpaid by defendant, it was held to be not a true class, but what is known in law as a spurious class action requiring actual joinder to enforce the

judgment. *Rath v. Armour & Co., supra.* The court held that any judgment had to be separately obtained for the particular relief of a particular plaintiff in the amount of his particular damages. In a spurious class action, the judgment rendered extends only to plaintiffs who have become actual parties before judgment. *Rath v. Armour & Co., supra.*

One of the leading recent cases, in my opinion, on the question of spurious versus true class representation is *Puget Sound Alumni of Kappa Sigma, Inc. v. Seattle,* 70 Wn.2d 222, 422 P.2d 799 (1967), involving an action to recover from the city money paid by abutting owners for the vacation of streets. Holding that, although abutting owners could not be required to pay for the land inuring to them through vacation of a street, nevertheless this court held that the plaintiffs could not maintain the action on behalf of some 92 persons who earlier but within the statutory period of limitations had paid the city for the property vacated to them by the city. Citing *Supreme Tribe of Ben-Hur v. Cauble,* 255 U.S. 356, 65 L. Ed. 673, 41 S. Ct. 338 (1921) in support of the binding nature of a judgment upon all members of a class in a true class action, this court pointed out that the spurious class suit requires permissive joinder (3 J. Moore, Federal Practice ¶ 23.10(3) (2d ed.)), which simply means that one is not a party until he becomes a party by joining in the action. We said in *Puget Sound Alumni,* 70 Wn.2d at 235:

> In the present case, the claims asserted against the city of Seattle do not have the characters of either joint or common right as used in class actions under Rule 23. Each claim for recovery differs upon the respective appraised values of the vacated streets abutting the respective properties. This is a spurious class action and the rights of absent parties may not be determined in this action. See *Elston v. King Cy.,* 178 Wash. 210, 34 P.2d 906 (1934), referred to by Professor Orland as illustrative of a spurious class action brought long before the adoption of Rule 23. 3 Orland, Wash. Prac., at 707.

If *Puget Sound Alumni of Kappa Sigma, Inc. v. Seattle,*

*supra,* an action to recover money for the same injury, *i.e.,* money paid to the city for earlier street vacation, by persons in the precise situation, *i.e.,* abutting landowners, is not a true but rather a spurious class action, and requires actual joinder of all parties, there is little basis in law to find a true class in the instant case where all parties are held in the city jail awaiting the filing of charges and presentation to court and are all readily available to join plaintiffs as additional parties or seek the same remedies individually.

I would, therefore, affirm the trial court in ruling that this is no true class action and let each plaintiff assert his remedy individually.

STAFFORD, J., concurs with HALE, J.