[No. 3770-II. Division Two. April 18, 1980.]

SANDRA L. MULLEN, *Appellant,* v. NORTH PACIFIC BANK, *Respondent.*

---

*Charles W. Talbot,* for appellant.

*Mark R. Patterson,* for respondent.

PEARSON, J.—This appeal challenges the adequacy of disclosures made by defendant North Pacific Bank when it extended credit to plaintiff Sandra Mullen to enable her to purchase an automobile. In her amended complaint plaintiff set forth two distinct causes of action which are relevant to the issues raised in this appeal: a challenge to the adequacy of the disclosures contained in the loan documents under the federal Truth in Lending Act[1] and a claim that defendant violated a duty toward her when it obtained vendor's single interest insurance on the collateral without clearly informing her of the limits of such coverage. Plaintiff later sought to amend her complaint again in order to allege a class action. We hold that the disclosure statement

---

[1]Title 15, chapter 41 of U.S.C.A. is specifically entitled "Consumer Credit Protection Act," 15 U.S.C.A. § 1601 *et seq.* (1974).

used by defendant satisfies the requirements of the Truth in Lending Act and affirm the order of the trial court granting defendant's motion for summary judgment on the Truth in Lending issues. We also affirm the order of the trial court denying plaintiff leave to amend her complaint to allege a class action and affirm the judgment entered for defendant on the other cause of action asserted by plaintiff.

In August 1976 Ms. Mullen borrowed $2,100 from North Pacific Bank to purchase an automobile. The bank took a security interest in the vehicle, and plaintiff signed three documents in connection with the transaction: a promissory note, security agreement and a disclosure statement required by the Truth in Lending Act. The disclosure statement informed plaintiff that the loan was secured by a 1972 Dodge Charger and stated that she owed a total of $2,486.40, representing the principal amount of the loan, interest at 12 percent per annum and other finance charges, which was to be repaid in 30 monthly installments. The disclosure statement also set forth the formula used to rebate unearned interest in the event of prepayment. The security agreement described the collateral and set forth other terms relevant to the transaction. Section 6 of the security agreement stated that the borrower must insure the vehicle "in an amount equal to the full insurable value thereof or to all sums secured hereby" with a loss payable clause in favor of the lender. This clause also stated that the lender was entitled to collect insurance proceeds and apply them to the loan balance in the event of loss. The promissory note set forth the total amount owed and the terms of repayment. The note also contained an acceleration clause commonly used by lenders.

After signing the loan documents, plaintiff obtained full insurance coverage on the car at a cost of approximately $600 per year. At the end of 1976 she allowed the insurance coverage to lapse. After plaintiff discussed the lapse of insurance coverage with an employee of defendant, the bank obtained vendor's single interest insurance (VSI) in March 1977 at a yearly premium of $298. A notice was sent

to plaintiff by defendant's insurer stating that the policy did not satisfy the financial responsibility laws and that the borrower should obtain full comprehensive coverage. The notice also limited the liability of the insurer to the lesser of the cost of repair, or the unpaid loan balance or the car's blue book value. Plaintiff later testified that she never received a copy of the bank's VSI policy, and that she assumed that the bank had obtained full comprehensive coverage. It is undisputed, however, that she received the notice from the bank's insurer which did explain the limited coverage.

In April 1977 plaintiff's automobile was completely destroyed. Under the terms of the VSI policy, the bank's insurance company settled the claim for an amount less than the unpaid loan balance. Plaintiff filed suit alleging in part the bank's failure to comply with the federal Truth in Lending Act. Prior to trial, the trial court granted defendant's motion for summary judgment on the Truth in Lending issues. After hearing evidence on plaintiff's other causes of action, the trial court entered judgment for the defendant bank.

## Truth in Lending Issues

Plaintiff argues that the Truth in Lending Act (hereinafter referred to as the Act) mandates the inclusion of certain information on the *disclosure statement,* and that the incorporation of this information within the other financing documents fails to satisfy the requirements of the Act. Specifically she claims that the bank violated the Act by not disclosing the following items on its disclosure statement: (1) that the borrower had a duty to insure the collateral; (2) that the lender had a right to accelerate the balance upon default; and (3) that the bank failed to describe the extent of its security interest by not informing her that it had a claim to insurance proceeds and other property upon destruction of the collateral. She also asserts that the defendant violated the Act by the fact that a slight

variance of terms appeared in the promissory note and disclosure statement concerning the date that late charges begin to accrue.

The purpose of the Truth in Lending Act is to promote the informed use of credit by requiring that lenders make a meaningful disclosure of credit terms in a form easily understood by borrowers. 15 U.S.C.A. § 1601 (1974).[2] *See also Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 36 L. Ed. 2d 318, 326–27, 93 S. Ct. 1652 (1973). The Act itself is divided into several subchapters. Subchapter 1 governs disclosures for consumer credit transactions and is itself divided into several parts. Part A therein (15 U.S.C.A. § 1601 *et seq.*) sets forth the general provisions of the Act. Part B (15 U.S.C.A. § 1631 *et seq.*) sets forth with particularity the specific items which the Act requires be disclosed in a conspicuous manner:

> Each creditor shall disclose clearly and conspicuously, in accordance with the regulations of the Board, to each person to whom consumer credit is extended and upon whom a finance charge is or may be imposed, *the information required under this part.*

15 U.S.C.A. § 1631(a) (1974) (Italics ours.) The corresponding section of Regulation Z, the regulations issued by the Federal Reserve Board to implement the Act, also states that "*[t]he disclosures required to be given by this part* shall be made clearly, conspicuously, in meaningful sequence," and in a form easily read by the consumer. 12 C.F.R. § 226.6(a) (1974). (Italics ours.)

█ The disclosures required by Part B are set forth with particularity in sections 127, 128 and 129 which are codified as 15 U.S.C.A. §§ 1637, 1638 and 1639 (1974). Section 129 governs disclosures required for consumer loans which are not made under open–end credit plans. Section 129(a) states that the lender must disclose the following

---

[2]15 U.S.C.A. § 1601 (1974) provides in pertinent part: "It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit".

items: the total amount financed, the amount of finance charges, the finance charge expressed as an annual percentage rate, the schedule of payments, delinquency charges made in the event of late payment, and a description of any security interest held by the creditor.[3] The word "disclosure" as used in the Act is thus a technical term which refers to those items which Part B specifically requires a lender to disclose in a conspicuous manner on the disclosure statement. *See Cosby v. Mellon Bank, N.A.*, 407 F. Supp. 233, 234 (W.D. Pa. 1976). *See also Johnson v. McCrackin-Sturman Ford, Inc.*, 527 F.2d 257, 262–63 (3d Cir. 1975). Part B does not encompass all the information relevant to a credit transaction which is discussed in other parts of the Act. Such additional information need not appear on the disclosure statement but may be contained within the other financing documents, such as the security agreement and promissory note. With this threshold rule in mind, we will discuss the alleged deficiencies in defendant's disclosure statement.

---

[3] 15 U.S.C.A. § 1639(a) (1974) provides in pertinent part:

"Consumer loans not under open end credit plans—Required disclosures by creditor.

"(a) Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:

"(1) The amount of credit of which the obligor will have the actual use . . .

"(2) All charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge.

"(3) The total amount to be financed . . .

"(4) . . . the amount of the finance charge.

"(5) The finance charge expressed as an annual percentage rate . . .
". . .

"(6) The number, amount, and the due dates or periods of payments scheduled to repay the indebtedness.

"(7) The default, delinquency, or similar charges payable in the event of late payments.

"(8) A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates."

■ Plaintiff first argues that section 106(c) of the Act, codified as 15 U.S.C.A. § 1605(c) (1974)[4] which requires that the lender include insurance charges written in connection with a consumer transaction in the computation of finance charges or clearly state that the borrower is free to choose her own insurer, requires that a lender disclose the fact that the borrower must insure the collateral on the disclosure statement. We disagree. The information concerning property insurance is contained in Part A to subchapter I of the Act and is not a technical disclosure required by Part B. Therefore, this information need not appear on the disclosure statement. It is undisputed that defendant's security agreement expressly placed the risk of loss on the debtor and set forth the debtor's duty to insure the collateral.[5] Plaintiff was free to choose her own insurer and in fact did so.[6] As such, the property insurance premium is not a cost imposed by the lender which a lender would be able to disclose. *See* 12 C.F.R. § 226.403 (1974) (creditor not required to disclose costs to insure the collateral when the borrower may choose its own insurer). The

---

[4]15 U.S.C.A. § 1605(c) (1974) provides in pertinent part:
"Determination of finance charge—Definition
". . .
"(c) Charges or premiums for insurance, written in connection with any consumer credit transaction, against loss of or damage to property or against liability arising out of the ownership or use of property shall be included in the finance charge unless a clear and specific statement in writing is furnished by the creditor . . . stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained."

[5]Section 6 of the security agreement signed by plaintiff clearly placed the risk of loss upon her and reads in pertinent part:
"Debtor will keep the property continuously insured by an insurer approved by Secured Party against fire, theft and other hazards . . . in an amount equal to the full insurable value thereof or to all sums secured hereby, with such form of loss payable clause as designated by and in favor of Secured Party . . . Secured Party shall have no liability whatsoever for any loss that may occur by reason of the omission or lack of coverage of any such insurance."

[6]Washington law prohibits a lender from arbitrarily requiring that a borrower obtain property damage insurance from a particular insurer. RCW 48.30.260.

alternate requirement of section 106(c) that the lender disclose that the borrower may select her own insurance is satisfied by the disclosures concerning risk of loss contained in the security agreement. Since this information is required by Part A of the Act, not Part B, the property insurance information need not be disclosed on the disclosure statement but may be contained within the other financing documents. We note that if a lender were required to include on the disclosure statement all information required in other parts of the Act, the disclosure form would become so complex as to destroy its purpose.

The next two deficiencies asserted by plaintiff turn on an interpretation of specific information required by Part B. Section 129(a)(7) requires that a lender disclose "default, delinquency, or similar charges payable in the event of late payments." 15 U.S.C.A. § 1639(a)(7) (1974).[7] Since this information is required by Part B, it must appear on the disclosure statement. Plaintiff argues that the lender's right to accelerate the loan balance on default, a remedy disclosed on defendant's promissory note but not on the disclosure statement, is a default or delinquency charge within the meaning of section 129(a)(7) which must appear on the disclosure statement.

The federal courts are presently divided on the question of whether the lender's acceleration remedy is a default or delinquency charge.[8] *Compare Begay v. Ziems Motor Co.*, 550 F.2d 1244, 1248–49 (10th Cir. 1977) (Act

---

[7]15 U.S.C.A. § 1639(a)(7) (1974) reads as follows:

"Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:

". . .

"(7) The default, delinquency, or similar charges payable in the event of late payments."

[8]During the time that this opinion has been under consideration in this court, the United States Supreme Court has announced a decision which concurs with the holding expressed herein that the lender's right of acceleration is not a default or delinquency charge subject to disclosure within the meaning of 15 U.S.C.A. §

does not require disclosure of lender's right to accelerate) *with LaGrone v. Johnson,* 534 F.2d 1360 (9th Cir. 1976) (acceleration right must always be disclosed on the disclosure statement). The emerging trend, however, is to require disclosure of charges imposed as a consequence of prepayment, whether it be by way of acceleration on default or voluntary prepayment, but not to require disclosure of the acceleration remedy itself. *E.g., Griffith v. Superior Ford,* 577 F.2d 455 (8th Cir. 1978). Such charges imposed as a consequence of acceleration or prepayment—whether or not a rebate of unearned interest will be made upon acceleration or other prepayment and the method used to compute any unearned interest rebate—are encompassed within the definition of default or delinquency charges within the meaning of Part B of the Act and must be disclosed on the disclosure statement. *Johnson v. McCrackin–Sturman Ford., Inc., supra; McDaniel v. Fulton Nat'l Bank,* 571 F.2d 948 (5th Cir. 1978); *Ballew v. Associates Financial Servs. Co.,* 450 F. Supp. 253, 266 (D. Neb. 1976). *See also* 12 C.F.R. § 226.8(b)(4) and (7) (1974).[9] This rule coincides with opinions of the Federal Reserve Board staff which have interpreted 12 C.F.R. § 226.8(b)(4) and (7) (1974) to require disclosure of the method used to compute the unearned finance charge upon prepayment but not to

1639(a)(7). *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 63 L. Ed. 2d 22, 100 S. Ct. 790 (1980).

[9]12 C.F.R. § 226.8(b)(4) and (7) (1974) provide in pertinent part:
"In any transaction subject to this section, the following items, as applicable, shall be disclosed:
". . .
"(4) The amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments.
". . .
"(7) Identification of the method of computing any unearned portion of the finance charge in the event of prepayment in full . . . and a statement of the amount or method of computation of any charge that may be deducted from the amount of any rebate of such unearned finance charge . . . If the credit contract does not provide for any rebate of unearned finance charges upon prepayment in full, this fact shall be disclosed."

require disclosure of the acceleration remedy itself. Federal Reserve Board Official Staff Interpretation No. FC–0054 (March 21, 1977) (1974–1977 Transfer Binder) CCH Consumer Credit Guide ¶ 31,552; Federal Reserve Board Unofficial Opinion No. 1208 (July 6, 1977), (1974–1977 Transfer Binder) CCH Consumer Credit Guide ¶ 31,647.[10] *See also St. Germain v. Bank of Hawaii,* 573 F.2d 572 (9th Cir. 1977) (holding a lender to have violated the Act when its disclosure statement is silent on the right to accelerate but basing its holding on the requirement that the borrower know whether a rebate of unearned interest will be made upon acceleration). In the present case, the bank's disclosure statement states that a rebate of unearned interest will be made upon prepayment and sets forth the method used to compute the rebate. We hold that this disclosure satisfies the requirements of 15 U.S.C.A. § 1639(a)(7) contained in Part B of the Act, and the failure to describe the lender's acceleration remedy on the disclosure statement does not violate the Act.[11]

The third deficiency in defendant's disclosure statement alleged by plaintiff turns on an interpretation of the extent of the lender's security interest which must be disclosed by section 129(a)(8) of the Act. 15 U.S.C.A. § 1639(a)(8) (1974).[12] The requirement that a lender disclose the extent of any security interest retained to insure repayment is contained within Part B. As such, it must appear on the

[10]Opinions of the Federal Reserve Board, both official and letter opinions, are entitled to great weight with the courts in interpreting the Act. *E.g., Philbeck v. Timmers Chevrolet, Inc.,* 499 F.2d 971 (5th Cir. 1974).

[11]We note again that if the lender were to disclose its remedies for default on the disclosure statement, such requirement would also add to the complexity of that form and frustrate its purpose.

[12]15 U.S.C.A. § 1639(a)(8) (1974) reads as follows:

"Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:

" . . .

disclosure statement. Defendant's disclosure statement states that plaintiff's loan is secured by a 1972 Dodge Charger described by its serial number. Plaintiff argues that the right of the lender to retain insurance proceeds upon destruction of the collateral to satisfy the debt and to set off the debt against the borrower's deposit account— information contained in the security agreement—constitutes additional security interests subject to disclosure. We disagree.

A security interest subject to disclosure under section 129(a)(8) of the Act is a statutory or contractual right which creates a lien upon property of the debtor subjecting it to the risk that upon default the creditor may levy upon it to discharge the unpaid debt. *Rounds v. Community Nat'l Bank,* 454 F. Supp. 883, 888 (S.D. Ill. 1978). *See also* 12 C.F.R. § 226.2(z) (1974). Not every benefit running in favor of the creditor constitutes a security interest. Since the lending contract places risk of loss on the debtor, the insurance proceeds protect the interests of both debtor and creditor. As such, they are not property of the debtor subject to an additional risk and do not qualify as an additional security interest within the meaning of section 129(a)(8) of the Act. *See Rounds v. Community Nat'l Bank, supra* at 888. Likewise, funds on deposit with the lender are not property of the debtor which are subject to risk upon nonpayment of the debt.[13] The right of the creditor to offset the debt against the borrower's deposit account, therefore, is not an additional security interest subject to disclosure. *Fletcher v. Rhode Island Hosp. Trust*

---

"(8) A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates."

[13]Washington law deems funds on deposit to be the property of the depository bank to which the depositor has a creditor's claim. *E.g., Allied Sheet Metal Fabricators, Inc. v. Peoples Nat'l Bank,* 10 Wn. App. 530, 518 P.2d 734, *cert. denied,* 419 U.S. 967, 42 L. Ed. 2d 183, 95 S. Ct. 231 (1974).

*Nat'l Bank,* 496 F.2d 927, 934–35 (1st Cir.), *cert. denied,* 419 U.S. 1001, 42 L. Ed. 2d 277, 95 S. Ct. 320 (1974).

■ We find plaintiff's remaining arguments under this section to be frivolous. Contrary to plaintiff's assertions, the security agreement signed by her does not cover after-acquired property. Therefore, no security interest in after-acquired property exists subject to disclosure under section 129(a)(8). The right of defendant to retain the vehicle's certificate of title does not constitute any additional security interest subject to disclosure since retention of the certificate merely gives the lender the right to perfect its security interest in the same automobile. *See Drew v. Flagship First Nat'l Bank,* 448 F. Supp. 434 (M.D. Fla. 1977). *See also* RCW 46.12.095. The possession of a certificate of title becomes an additional security interest subject to disclosure only when the lender does not have a security interest in property covered by the title certificate or when possession of the certificate deprives the borrower of other valuable rights associated with possession of the certificate itself. *See Charnita, Inc. v. Federal Trade Comm'n,* 479 F.2d 684, 687 (3d Cir. 1973).

■ We find no merit in plaintiff's final Truth in Lending argument that a minor discrepancy between information contained on the disclosure statement and promissory note concerning when late payments began to accrue constituted misleading additional information in violation of section 122(b) of the Act and 12 C.F.R. § 226.6(c) (1974).[14] The Truth in Lending Act is not to be interpreted so that it becomes a maze of obscure pitfalls for creditors.

---

[14]Section 122(b) of the Act, codified as 15 U.S.C.A. § 1632(b) (1974) and contained within Part B reads as follows:

"Any creditor may supply additional information or explanations with any *disclosures required under this part*". (Italics ours.)

12 C.F.R. § 226.6(c) (1974) provides that additional information shall not be stated to mislead or confuse the borrower or contradict or obscure the "*information . . . required by this part.*" (Italics ours.) Since the date of accrual of late payment *is* not information subject to disclosure under Part B, contradiction of this information within the financing documents does not violate 12 C.F.R. § 226.6(c).

*George v. General Fin. Corp.,* 414 F. Supp. 33, 35 (E.D. La. 1976). Minor discrepancies in terms which do not affect the borrower's ability to understand the essential terms of the credit transaction do not give rise to liability. *Herbst v. First Fed. Sav. & Loan Ass'n,* 538 F.2d 1279, 1283 (7th Cir. 1976); *Glover v. Doe Valley Dev. Corp.,* 408 F. Supp. 699, 703 (W.D. Ky. 1975).

We hold that defendant's disclosure form satisfies the requirements of the Truth in Lending Act and affirm the order of the trial court granting defendant's motion for summary judgment on the Truth in Lending issues.

## FIDUCIARY DUTY ISSUES

At trial plaintiff argued that a fiduciary relationship arose between her and defendant when the bank agreed to procure property insurance on the vehicle, and that defendant breached its fiduciary duty toward her by failing to inform her clearly that it had obtained only limited vendor's single interest insurance (VSI) and by failing to deliver a copy of the VSI policy to her. We disagree and affirm the findings of the trial court that the parties' relationship remained that of debtor and creditor and a fiduciary relationship was never formed.

■■ A fiduciary relationship does not arise unless an agency relationship is created. *Moss v. Vadman,* 77 Wn.2d 396, 404, 463 P.2d 159 (1969). Agency is a question of fact and results from the manifestation of consent by one person that another shall act on his behalf. *E.g., Moss v. Vadman, supra* at 402–03; *Matsumura v. Eilert,* 74 Wn.2d 362, 444 P.2d 806 (1968). The trial court found that plaintiff understood that she had a duty to insure the collateral, and that the bank acted in its own economic interest to protect its security interest when it took out VSI insurance. As such, the bank did not agree to act on behalf of plaintiff, and the parties' relationship remained that of debtor and creditor. We hold these findings to be supported by substantial evidence. Findings supported by substantial evidence will not be overturned on appeal. *E.g., Holland v.*

*Boeing Co.*, 90 Wn.2d 384, 583 P.2d 621 (1978); *Moss v. Vadman, supra* at 404.

Likewise, defendant violated no duty to plaintiff when it did not deliver a copy of its VSI policy to her. A lender is under no duty to insure the borrower's interest in the collateral when the lending contract places risk of loss on the borrower. *Spokane Merchants' Ass'n v. Parry*, 60 Wash. 204, 207, 110 P. 991 (1910). *See also* 11 R. Anderson, *Couch Cyclopedia of Insurance Law* § 42:654, 655 (2d ed. 1963). RCW 48.18.260(1) requires every insurance policy to be delivered to "the insured or to the person entitled thereto." RCW 48.18.260(2) requires that lenders deliver insurance policies to the borrower which insure the interest of the borrower.[15] By its very nature, a VSI policy insures only the interest of the lender. Since defendant was under no duty to insure plaintiff's interest in the vehicle and the insurance it did procure did not insure plaintiff's interest, we hold that defendant violated no duty to plaintiff by not delivering a copy of its VSI policy to her. Any duty toward plaintiff was discharged by plaintiff's receipt of the notice from defendant's insurer setting forth the limits of its liability.

## CLASS ACTION ISSUES

In her final assignment of error plaintiff argues that the trial court erred when it refused to grant her motion to amend her complaint in order to pursue a class action under the Truth in Lending Act. A motion for leave to amend a complaint is addressed to the sound discretion of the trial court, and the trial court's ruling thereon will

---

[15]RCW 48.18.260(2) provides in pertinent part:

"In event the original policy is delivered or is so required to be delivered to or for deposit with any vendor, mortgagee, or pledgee of any motor vehicle . . . *in which policy any interest of the vendee, mortgagor, or pledgor . . . is insured,* a duplicate of such policy, or memorandum thereof setting forth the type of coverage, limits of liability, premiums . . . and duration of the policy, shall be delivered by the vendor, mortgagee, or pledgee to each such vendee, mortgagor, or pledgor named in the policy . . ." (Italics ours.)

not be overturned absent an abuse of discretion. *E.g., Sanwick v. Puget Sound Title Ins. Co.,* 70 Wn.2d 438, 445, 423 P.2d 624, 38 A.L.R.3d 315 (1967); *Tagliani v. Colwell,* 10 Wn. App. 227, 233–34, 517 P.2d 207 (1973); CR 15(a). Specifically, the question of whether or not to allow a suit to proceed as a class action is one primarily for determination by the trial court. *See Brown v. Brown,* 6 Wn. App. 249, 254, 492 P.2d 581 (1971).

We hold that the trial court did not err in its ruling, and that it properly denied plaintiff's motion to amend. Plaintiff made her motion in February 1978 when she sought to represent a class composed of herself and other persons who obtained consumer loans from defendant between January 1977 and September 1977. The Truth in Lending Act contains a 1–year statute of limitation. 15 U.S.C.A. § 1640(e) (1974). As such, the only class of persons with an action under the Act at the time plaintiff made her motion to amend in February 1978 were those persons who obtained loans from defendant between February 1977, 1 year prior to the date of the proposed amended complaint, and February 1978. Since plaintiff obtained her loan in August 1976, she could not represent the proposed class, and the trial court properly denied her motion for leave to amend.

The judgment of the trial court is affirmed.

REED, C.J., and JOHNSON, J. Pro Tem., concur.

Reconsideration denied June 2, 1980.

Review denied by Supreme Court September 5, 1980.