[No. 62079-2.    En Banc.    November 2, 1995.]

LACEY NURSING CENTER, INC., ET AL., *Respondents*, v. THE DEPARTMENT OF REVENUE, *Petitioner*.

*Christine O. Gregoire, Attorney General,* and *Cameron G. Comfort* and *Leland T. Johnson, Assistants,* for petitioner.

*Kargianis, Austin & Osborn,* by *George E. Kargianis* and *Susan Machler;* and *Workland, Witherspoon & Brajcich,* by *Raymond G. Dodge, Jr.,* for respondents.

SMITH, J. — Petitioner State of Washington, Department of Revenue, seeks direct discretionary review of a decision of the Thurston County Superior Court which ruled that a suit by nursing homes demanding refunds of

state Business and Occupation taxes may be maintained as a class action. We reverse.

## QUESTION PRESENTED

The question presented in this case is whether an action by nursing homes for refund of Business and Occupation taxes under RCW 82.32.180 may be maintained as a class action.

## STATEMENT OF FACTS

Petitioner Department of Revenue (Department) is the state agency responsible for assessment and collection of Business and Occupation taxes in Washington.[1] Respondents are nursing homes[2] (nursing homes) seeking Business and Occupation tax refunds under RCW 82.32.180.[3]

On December 6, 1993, Respondent nursing homes filed a notice of appeal and class action complaint under RCW 82.32.180. On December 20, 1993, they filed a first amended notice of appeal and class action complaint seeking refunds of Business and Occupation taxes (B & O taxes) on behalf of all licensed nursing homes for the period 1989 to 1993. The complaint included in the class of plaintiffs "all other persons similarly situated who are taxpayers and owners/operators of licensed nursing homes in Washington and who are so numerous that joinder of all members is impracticable."[4] The complaint asserted that

---

[1] *See* RCW 82.01.060(1).

[2] One of the originally named plaintiffs, Washington Health Care Association, claims it is a nonprofit corporation representing nursing homes in the State. Clerk's Papers at 5.

[3] RCW 82.32.180 provides in relevant part:

Any person, . . . having paid any tax as required and feeling aggrieved by the amount of the tax may appeal to the superior court of Thurston county, within the time limitation for a refund provided in chapter 82.32 RCW. . . .

The trial in the superior court on appeal shall be de novo and without the necessity of any pleadings other than the notice of appeal. The burden shall rest upon the taxpayer to prove that the tax as paid by the taxpayer is incorrect, either in whole or in part, and to establish the correct amount of the tax.

[4] Clerk's Papers at 5, 55.

the class should receive a partial Business and Occupation tax exemption for the sale or rental of real estate under RCW 82.04.390 to the extent their revenue from that source could be apportioned.

On December 17, 1993, Respondent nursing homes filed a motion for class certification and preassignment. On January 14, 1994, the Thurston County Superior Court, the Honorable Richard A. Strophy, preassigned the case, but continued the hearing on the class certification motion.[5] The case was subsequently preassigned to Judge Strophy.

The nursing homes renewed their class certification motion on May 9, 1994. At a hearing on May 18, 1994, Judge Strophy orally granted the motion, ruling that class actions are permitted under RCW 82.32.180 and that the nursing homes had sufficiently established the prerequisites for class action under Superior Court Civil Rule 23.[6]

On June 17, 1994, Respondents filed a second amended notice of appeal and class action complaint, which added an additional refund claim under the patient services exemption of RCW 82.04.4289.[7] On June 29, 1994, the trial court entered findings of fact, including the following:

2.1 Plaintiff's [sic] claims for tax refunds are brought under RCW 82.32.180.

2.2 The class is composed of owners and/or operators of licensed nursing homes in Washington, as defined in RCW 18.51.010, who pay B&O taxes on the amounts received from the operation of said facilities.

2.3 The class is so numerous that joinder of all members is not practicable.

2.4 There are questions of law common to the class.

2.5 The claims of the representative parties are typical of the claims of the members of the class.

---

[5]Clerk's Papers at 76-77.

[6]Clerk's Papers at 200-05.

[7]Clerk's Papers at 151.

2.6 The representatives of the class will fairly and adequately protect the members of the class.

2.7 The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications by the Department of Revenue with respect to individual members of the class which would establish incompatible standards of conduct.

2.8 The questions of law common to the members of the class predominate over any questions affecting only individual members.[8]

From these findings of fact the court entered conclusions of law that:

3.1 Class refund actions are permitted under RCW 82.32.180.

3.2 The action shall be maintained as a class action.

3.3 The class shall be composed of all owner and/or operators of licensed nursing homes as defined in RCW 18.51.010.[9]

On August 22, 1994, the trial court denied a motion for reconsideration filed by the Department of Revenue. On December 30, 1994, Respondent nursing homes filed a third amended notice of appeal and class action complaint adding an alternative cause of action which they claimed was sufficient to plead individual actions for B & O tax refunds under RCW 82.32.180.[10] The complaint named numerous additional parties seeking refunds.[11] We granted review on March 6, 1995.

## DISCUSSION

Under the Washington Revenue Act, a business and oc-

---

[8]Clerk's Papers at 154-55.

[9]Clerk's Papers at 155.

[10]Clerk's Papers at 239-73.

[11]The parties added in the third amended notice of appeal and class action complaint were: Crescent Convalescent Center, Island Manor Nursing Center, Renaissance Care Center, Shuksan Convalescent Center, Integrated Health Services of Seattle, Parkway North Care Center, Garden Terrace Manor, Royal

cupation tax is imposed on "every person . . . for the act or privilege of engaging in business activities." The tax is "measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business[.] . . ."[12] "Business" is defined to include "all activities engaged in with the object of gain, benefit, or advantage to the taxpayer or to another person or class, directly or indirectly."[13] Under the Act, the Department of Revenue has authority to promulgate regulations which have the force of law.[14] WAC 458-20-168 (Rule 168) governs taxation of hospitals, medical care facilities, and adult family homes.

Under WAC 458-20-168(2)(b), the term "nursing home" means "only institutions defined as nursing homes in chapter 18.51 RCW." Under RCW 18.51.010(1), "nursing

Vista, Cliff Manor/Sullivan Park, Village Concepts, Inc., Soundcare, Inc., Parkside Nursing Care Center, North Central Care Center, Madeline Villa Health Care Center, Inc., Life Care Center of Richland, Quad C Health Care Centers, Harmony House Health Care Center, Terrace Heights Nursing Care Center, Lakeridge Care Center, The Meadowbrook, Selah Convalescent Home, Inc., Sunrise Healthcare, Inc., Sunshine Garden, Manor Care, Inc., Tri-State Health and Rehabilitation Center, Unicare Health Facilities, Island Manor Nursing Center, Gig Harbor Health Care, Fort Vancouver Convalescent Center, Hallmark Manor, Federal Way Convalescent Center, Fir Lane Terrace Convalescent Center, Emerald Circle Convalescent Center, Edgewood Manor of Grays Harbor, Inc., Buena Vista Inc., Alliance Healthcare Corporation, North Bend Nursing Center, Regency Manor, Regency Care Center at Monroe, Regency Care Center at Spokane, Mt. Adams Care Center, Regency Care Center at Walla Walla, Mt. Baker Care Center, Good Samaritan Health Care Center, Chalet Healthcare, Inc., Bremerton Convalescent Center, Crestwood Convalescent Center, Colonial Vista, Highline Convalescent Center, Triple C Convalescent Center, Unicare Health Facilities, Belmont Terrace, Restorative Care Center, Morton Nursing Home, Beechwood Nursing Home, Magnolia Health Care Center, Sunshine Healthcare Corporation, Yakima Convalescent Center, Port Angeles Care Center, Clay & Clay Partners II, Clay & Clay Partners, Smith & Clay Enterprises, Pincrest Manor, Bayview Inn, Viewcrest Convalescent Center, Oakhurst Convalescent Center, Woodland Terrace Residential Training Center, Clarkston Care Center, Pacific Regent, Woodland Care Center, Ocean View Convalescent Center, Alderwood Manor, Triple C Convalescent Center, Highline Convalescent Center, Life Care Center of Kennewick, Virginia Manor and Riverton Heights. This appeal, however, is based upon the second amended complaint.

[12]RCW 82.04.220. *See also Impecoven v. Department of Revenue*, 120 Wn.2d 357, 841 P.2d 752 (1992).

[13]RCW 82.04.140.

[14]RCW 82.32.300; *see also* Clerk's Papers at 47.

home" is defined as "any home, place or institution which operates or maintains facilities providing convalescent or chronic care, or both, for a period in excess of twenty-four consecutive hours for three or more patients not related by blood or marriage to the operator, who by reason of illness or infirmity, are unable properly to care for themselves." The statute also provides that "[c]onvalescent and chronic care may include but not be limited to any or all procedures commonly employed in waiting on the sick, such as administration of medicines, preparation of special diets, giving of bedside nursing care, application of dressings and bandages, and carrying out of treatment prescribed by a duly licensed practitioner of the healing arts. . . ."

Under WAC 458-20-168(3), "[t]he sale of tangible personal property which is not part of the medical service being provided to a patient is taxable under the retailing B & O tax classification. . . ."

Under the "service" classification, WAC 458-20-168(3)(b) provides in part that "[t]he gross income derived from personal and professional services of hospitals, . . . nursing homes, convalescent homes, clinics, rest homes, health resorts, and similar health care institutions is subject to business and occupation tax under the service and other activities classification."

The Business and Occupation tax was imposed upon services provided by Respondent nursing homes (a) providing services of trained personnel and mental health coordinators on staff, (b) supervising and assisting residents, (c) providing a structured environment for residents to promote health care treatment, (d) purchasing and preparing food for residents, and (e) providing lodging.[15]

Respondent nursing homes brought this action against the state under RCW 82.32.180 and Superior Court Civil Rule 23 (CR 23). CR 23, identical to Rule 23 of the Federal

---

[15]Clerk's Papers at 48.

Rules of Civil Procedure,[16] " 'provides a means by which, where a large group of persons are interested in a matter, one or more may sue or be sued as representatives of the class without needing to join every member of the class.' "[17] "Class actions are specialized types of suits, and as a general rule must be brought and maintained in strict conformity with the requirements of CR 23."[18]

CR 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

██ ██ "A trial court's decision to certify a class is discretionary. . . . The court's decision will not be overturned absent a manifest abuse of discretion. . . ."[19] "A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds."[20] "[A] trial court's class certification will be upheld if it appears from the record that the court considered all of the criteria of CR 23."[21]

On June 29, 1994, the trial court entered an order

---

[16]*DeFunis v. Odegaard*, 84 Wn.2d 617, 529 P.2d 438 (1974); *Johnson v. Moore*, 80 Wn.2d 531, 496 P.2d 334 (1972).

[17]*Department of Ecology v. Pacesetter Constr. Co.*, 89 Wn.2d 203, 215, 571 P.2d 196 (1977) (quoting CHARLES A. WRIGHT, LAW OF FEDERAL COURTS § 72, at 306 (2d ed. 1970)).

[18]*DeFunis*, 84 Wn.2d at 622; *Johnson v. Moore*, 80 Wn.2d 531, 496 P.2d 334 (1972).

[19]*Eriks v. Denver*, 118 Wn.2d 451, 466, 824 P.2d 1207 (1992) (citing *Washington Educ. Ass'n v. Shelton Sch. Dist. 309*, 93 Wn.2d 783, 790, 613 P.2d 769 (1980); *Mullen v. North Pac. Bank*, 25 Wn. App. 864, 879, 610 P.2d 949, *review denied*, 94 Wn.2d 1009 (1980)).

[20]*Eriks v. Denver*, 118 Wn.2d at 467.

[21]*Id.* at 467.

certifying this case as a class action. Respondents claim this was proper because RCW 82.32.180, a procedural statute, is in conflict with CR 23, and "[w]here a rule of court is inconsistent with a procedural statute, the court's rule-making power is supreme."[22] They assert that CR 23 impliedly permits excise tax refund class actions because they are not expressly precluded under RCW 82.32.180. Petitioner Department claims the trial court erred in certifying this case as a class action because Respondents did not establish their right to the certification under CR 23 and that Respondents relied solely upon the declaration of George Kargianis.[23]

The trial court determined the evidence presented by Respondents was sufficient to properly maintain this suit as a class action. Respondents provided the trial court with declarations other than Mr. Kargianis' and with determinations by the Department of Revenue to support their motion for class certification.[24] The trial court properly concluded that Respondents satisfactorily established class certification under CR 23. At least at that point, the trial court did not abuse its discretion in certifying this as a class action.

However, the question must still be answered whether a class action may properly be maintained under RCW 82.32.180, which provides:

> Any person, except one who has failed to keep and preserve books, records, and invoices as required in this chapter and chapter 82.24 RCW, having paid any tax as required and feeling aggrieved by the amount of the tax may appeal to the superior court of Thurston county, within the time limitation for a refund provided in chapter 82.32 RCW or, if an application for refund has been made to the department within that

---

[22]*State v. Ryan*, 103 Wn.2d 165, 178, 691 P.2d 197 (1984).

[23]Clerk's Papers at 96-117.

[24]Actually, the court considered declarations of Craig LeVee, Steven M. Brown, Jerry Bodine, Donald Kleweno, George Kargianis, and Kenneth J. Capek. In addition, the trial court examined Audit Directive 8168.3, Revenue Determination number 90-252 and Revenue Determination number 90-297.

time limitation, then within thirty days after rejection of the application, whichever time limitation is later. In the appeal *the taxpayer shall set forth the amount of the tax imposed upon the taxpayer which the taxpayer concedes to be the correct tax and the reason why the tax should be reduced or abated.* The appeal shall be perfected by serving a copy of the notice of appeal upon the department within the time herein specified and by filing the original thereof with proof of service with the clerk of the superior court of Thurston county.

The trial in the superior court on appeal shall be *de novo* and without the necessity of any pleadings other than the notice of appeal. *The burden shall rest upon the taxpayer to prove that the tax as paid by the taxpayer is incorrect, either in whole or in part, and to establish the correct amount of the tax.* In such proceeding the taxpayer shall be deemed the plaintiff, and the state, the defendant; and both parties shall be entitled to subpoena the attendance of witnesses as in other civil actions and to produce evidence that is competent, relevant, and material to determine the correct amount of the tax that should be paid by the taxpayer. Either party may seek appellate review in the same manner as other civil actions are appealed to the appellate courts.

It shall not be necessary for the taxpayer to protest against the payment of any tax or to make any demand to have the same refunded or to petition the director for a hearing in order to appeal to the superior court, but *no court action or proceeding of any kind shall be maintained by the taxpayer to recover any tax paid, or any part thereof, except as herein provided.*

The provisions of this section shall not apply to any tax payment which has been the subject of an appeal to the board of tax appeals with respect to which appeal a formal hearing has been elected.

(Emphasis added).

■ This court strictly construes tax statutes conferring credits, refunds, or deductions. "The policy reason for construing a tax statute narrowly . . . is . . . to protect

the State from unanticipated losses."[25] Petitioner Department argues that this court should construe the language of RCW 82.32.180 narrowly and reverse the trial court's certification of this case as a class action because continuing it as a class action would force the State to respond to unidentified refund appeals for unstated amounts without protection against unanticipated losses.

The statute imposes specific conditions upon taxpayers seeking excise tax refunds. The Legislature created a cause of action for taxpayers "feeling aggrieved by the amount of the tax" paid. To properly initiate an action for an excise tax refund, an aggrieved taxpayer is required by RCW 82.32.180 to "keep and preserve books, records, and invoices" in order to file an application for refund in the superior court of Thurston County.[26] Under the statute taxpayers must (1) identify themselves, (2) state the correct amount of tax each concedes to be the true amount, (3) state reasons why the tax should be reduced or abated, and then (4) prove that the tax paid by the taxpayer is incorrect. The taxpayer must satisfy those specific conditions to initiate an excise tax refund appeal. The trial court properly certified this case initially as a class action under CR 23, but unnamed and unidentified members of the class cannot satisfy the specific requirements of RCW 82.32.180. To properly maintain a class action for refund of B & O taxes paid, every member of the class must meet those requirements. Respondents have not established that all members of the class have met, or can meet, those requirements.

A number of nursing homes were identified by name as plaintiffs in the second and third amended notice of appeal and class action complaint. Although identified by name, neither claimant stated the "amount of tax imposed upon the taxpayer which the taxpayer concedes to be the

---

[25]*Puget Sound Nat'l Bank v. Department of Revenue*, 123 Wn.2d 284, 290, 868 P.2d 127 (1994).

[26]RCW 82.32.180.

correct tax."[27] In Respondents' second and third amended notice of appeal and class action complaint, each claimant does state the amount of B & O tax paid in the last four years,[28] but none states why their taxes should be abated, nor do they state facts to prove the taxes they paid are incorrect. These are specific requirements of RCW 82.32.180.

Each claimant states that "a substantial percentage of the income of plaintiff's facility is derived as compensation for services rendered to patients and/or from the sale of prescription drugs."[29] The "substantial percentages" claimed by each member of the class is vague and varies from member to member.[30] This is not sufficient to satisfy the statutory requirement to "set forth . . . the reason why the tax should be reduced or abated."[31]

The CR 23(a) requirement for class action was generally satisfied. However, RCW 82.32.180 imposes specific requirements applicable to excise tax refund suits which were not met by Respondents. Under this circumstance, the trial court's certification of this case as a class action was manifestly unreasonable and based upon untenable grounds. The Respondents did not satisfy the statutory

---

[27]RCW 82.32.180.

[28]Clerk's Papers at 243-73.

[29]Clerk's Papers at 243.

[30]The individual Respondents claim they may be exempt from B & O tax because a percentage of their income comes from rental of real estate: Valley Terrace, Inc. between 30% and 31%; Burien Terrace, Inc. between 34% and 36%; Skagit Valley Convalescent Center, Inc. between 36% and 38%; Regency Care Centers, Inc. approximately 30%; Laurel Hill Enterprises, Inc. approximately 30%; Good Samaritan Health Care Center approximately 30%; Regency Care Center of Arlington approximately 30%; Care Services, Inc. approximately 35%; Pacific Care Centers—Washington, Inc. approximately 25%; Havenwood Care Center, Inc. approximately 18%; Brady R. Lane, d/b/a Ridgefield Care Center approximately 33%; and Port Orchard Care Center, Inc. approximately 32%. Clerk's Papers at 243-47.

[31]RCW 82.32.180.

requirements of RCW 82.32.180.[32] And, logically, unnamed and unidentified plaintiffs in a class action could not satisfy those requirements. We therefore reverse the decision of the trial court that an excise tax refund lawsuit could be maintained as a class action under RCW 82.32.180.

RCW 82.32.180 is a conditional, partial waiver of the sovereign immunity afforded by article II, section 26 of the Washington Constitution. The right to bring excise tax refund suits against the state must "be exercised in the manner provided by the statute."[33]

In his oral ruling Judge Strophy concluded that the language of RCW 82.32.180 did not preclude class action suits. He stated:[34]

> RCW 82.32.180 . . . states, "It shall not be necessary for a taxpayer to protest against payment of any tax or to make any demand to have the same refunded or to petition the director for a hearing in order to appeal to the Superior Court."
>
> Such language would indicate to me that a taxpayer is free to protest the validity of a particular tax without necessarily filing an individual tax refund application or without having paid such a tax prior to the protest of the tax in issue. What I believe is a fair construction of this statute . . . is that when you're talking about the *computation of the tax and the factual basis for the application of the tax*, which would be peculiar to any individual taxpayer and unique in that regard and nothing more than that, then certainly no court action or proceeding of any kind shall be maintained by the taxpayer to recover any tax paid about which the taxpayer's protesting the computation of or the factual basis of without the taxpayer having first paid the tax. That makes sense to me.
>
> On the other hand, the preceding phrase in that paragraph seems to me to be *broad enough to not preclude expressly—*

---

[32]*Havens v. C & D Plastics, Inc.*, 124 Wn.2d 158, 168, 876 P.2d 435 (1994) (citing *In re Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993)).

[33]*Guy F. Atkinson Co. v. State*, 66 Wn.2d 570, 575, 403 P.2d 880 (1965).

[34]Clerk's Papers at 200-01.

*and therefore allow impliedly*—something other than an individual taxpayer protest in order to determine the legitimacy of a tax when the legal basis for application of the tax is at the heart of the issue, rather than computation or factual basis regarding application of the tax.

(Emphasis added).

"[T]he interpretation of statutes has, historically and traditionally, been the role or function of the judiciary as an interrelated or close counterpart to the recognized function of the legislative branch of government . . . .[I]t is well recognized that the underlying purpose inherent in the function of judicial interpretation of statutory enactments is to *effectuate the objective*—often referred to as the intent—of the legislature."[35]

"In resorting to statutory interpretation, this court first looks to the plain meaning of words used in a statute."[36] It is a general principle that tax statutes conferring credits, refunds or deductions are construed narrowly.[37] The language of RCW 82.32.180 demonstrates that the Legislature intended excise tax refunds to be made only as prescribed by the statute. That is, excise tax refunds may properly be appealed by a taxpayer only if the taxpayer satisfies the conditions specified under the statute.

In this case, the trial court construed RCW 82.32.180 by considering what was impliedly permitted under the statute. The trial court erred in this interpretation. The portion of the statute quoted by Judge Strophy simply explains what a taxpayer is not required to do before filing an excise tax refund suit.

RCW 82.32.180 contains no express language authorizing class actions in suits for tax refunds. Since the state

---

[35]*Murphy v. Campbell Inv. Co.*, 79 Wn.2d 417, 419-20, 486 P.2d 1080 (1971).

[36]*State v. McDougal*, 120 Wn.2d 334, 350, 841 P.2d 1232 (1992) (citing *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990)).

[37]*See In re All-State Constr. Co.*, 70 Wn.2d 657, 665, 425 P.2d 16 (1967); *Corporation of Catholic Archbishop v. Johnston*, 89 Wn.2d 505, 507, 573 P.2d 793 (1978).

waives sovereign immunity only to the extent provided in the statute, the statute must expressly authorize class actions. If the Legislature intended to permit class action suits for taxpayers seeking excise tax refunds under RCW 82.32.180, it logically would have included such a provision permitting them. While the trial court correctly determined initially that CR 23 authorized a class action, its certification as a class action under RCW 82.32.180 was contrary to the intent of the Legislature.

## SUMMARY AND CONCLUSIONS

Respondents brought an excise tax refund action against the State under RCW 82.32.180. They sought to make it a class action under CR 23. "Class actions are specialized types of suits, and as a general rule must be brought and maintained in strict conformity with the requirements of CR 23."[38] Respondents initially met the requirements of CR 23, which provides in subsection (a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

But the question must still be answered whether a class action may properly be maintained under RCW 82.32.180. The statute imposes specific conditions upon taxpayers seeking excise tax refunds. The Legislature created a cause of action for taxpayers "feeling aggrieved by the amount of the tax" paid. To properly initiate an action for an excise tax refund, an aggrieved taxpayer is required by RCW 82.32.180 to "keep and preserve books, records, and

---

[38]*Defunis*, 84 Wn.2d at 622; *Johnson v. Moore*, 80 Wn.2d 531, 496 P.2d 334 (1972).

invoices" in order to file an application for refund in the superior court of Thurston County.[39] Taxpayers must (1) identify themselves, (2) state the correct amount of tax each concedes to be the true amount, (3) state reasons why the tax should be reduced or abated, and then (4) prove that the tax paid by the taxpayer is incorrect.

Although the trial court properly certified this case initially as a class action under CR 23, the unnamed and unidentified members of the class cannot satisfy the specific requirements of RCW 82.32.180. These requirements were not satisfied by respondents who are named and identified, nor could they be satisfied by unnamed and unidentified plaintiffs in a class action. The trial court's certification of this case as a class action under RCW 82.32.180 was manifestly unreasonable and was made upon untenable grounds.[40] We therefore reverse the decision of the trial court that an excise tax refund lawsuit could be maintained as a class action under RCW 82.32.180.

As a general principle, this court has held that tax statutes conferring credits, refunds or deductions must be construed narrowly.[41] RCW 82.32.180 is a conditional, partial waiver of the sovereign immunity afforded by article II, section 26 of the Washington Constitution. The statute permits certain excise tax refund suits to be brought in the superior court of Thurston County. The right to bring excise tax refund suits against the state must "be exercised in the manner provided by the statute."[42] If the Legislature intended to permit class action lawsuits for taxpayers seeking excise tax refunds, it would have made express provision for it. This it did not do. The

---

[39]RCW 82.32.180.

[40]*Havens v. C & D Plastics, Inc.*, 124 Wn.2d 158, 168, 876 P.2d 435 (1994) (citing *In re Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993)).

[41]*See In re All-State Constr. Co.*, 70 Wn.2d 657, 665, 425 P.2d 16 (1967); *Corporation of Catholic Archbishop v. Johnston*, 89 Wn.2d 505, 507, 573 P.2d 793 (1978).

[42]*Guy F. Atkinson Co. v. State*, 66 Wn.2d 570, 575, 403 P.2d 880 (1965).

trial court was in error in interpreting RCW 82.32.180 to allow class actions.

We reverse the decision of the Thurston County Superior Court which determined that an excise tax refund lawsuit under RCW 82.32.180 may be maintained as a class action.

DURHAM, C.J., and DOLLIVER, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE, and PEKELIS, JJ., concur.

Reconsideration denied December 19, 1995.