[No. 23016-0-II. Division Two. January 22, 1999.]

ENTERPRISE LEASING, INC., *Respondent,* v. THE CITY OF TACOMA, *Appellant.*

*Robin Jenkinson, City Attorney*, and *Harding T. Roe, Assistant*, for appellant.

*D. Bruce Lamka* of *Davis Wright Tremaine*, for respondent.

BRIDGEWATER, C.J. — The City of Tacoma appeals entry of summary judgment in favor of Enterprise Leasing, Inc. We hold that RCW 35.21.710 does not require that Tacoma's definition of "retail sale" be consistent with the State's definition and does not limit the Business and Occupation (B&O) tax that Tacoma may apply to Enterprise's car-rental activity. Further, we hold that RCW 35.21.710 contains a "grandfather" clause as to existing classifications and taxes at the time of its passage and permits Tacoma's exercise of its taxing power with regard to Enterprise. We reverse.

The material facts of this litigation are not in dispute. Enterprise operates a car-rental business at three locations in Tacoma. Tacoma imposes a B&O tax on business activity conducted within the city. TACOMA MUNICIPAL CODE (TMC) 6.68.220. The tax rate varies according to the type of business activity. Tacoma taxes rental activity under the "service" classification. (*See* Tax Director's Rule 211.) Under Tacoma's current tax system, the B&O tax for service activity is .48 percent (0.0048) of gross sales, higher than the .153 percent (0.00153) rate that applies to retail sales activity.

By way of background information, Enterprise pays other retail sales taxes, aside from Tacoma's B&O tax. For each car-rental transaction, Enterprise collects both the state retail sales tax and Tacoma's "local option" retail sales tax from its customers and transmits those funds to the State. RCW 82.08; RCW 82.14. Presumably, Enterprise also pays

a state B&O tax. *See* RCW 82.04. In these overlapping statutes (state sales tax, "local option" sales tax, and state B&O tax), the State broadly defines "retail sales" to include leases and rental activity.[1] Tacoma's B&O tax is an additional tax that Enterprise pays directly to the city. Seattle has a similar, multi-tiered B&O tax. Tacoma asserts that its financial position is largely dependent upon the B&O tax.

Tacoma found that Enterprise had been paying city B&O taxes at the retail rate instead of the higher service rate and, consequently, audited Enterprise and assessed taxes, interest, and penalties against Enterprise. Enterprise appealed to a City Hearing Examiner, who upheld the assessment notices in all respects. On appeal, Pierce County Superior Court granted summary judgment in favor of Enterprise.

The gist of Enterprise's argument both below and here is that Tacoma must adhere to the State's definition of a "retail sale" (which includes rental activity) and Tacoma may not tax Enterprise at a rate higher than 0.2 percent due to a statute imposing a tax cap.

 The trial court granted summary judgment in favor of Enterprise based on the court's interpretation of RCW 35.21.710. When reviewing summary judgment, the appellate court's role is to engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Here, the parties do not dispute the few

---

[1]*See* RCW 82.08.010(4) [retail sales tax] in part:

> The meaning attributed in chapter 82.04 RCW to the terms . . . "retail sale" . . . shall apply equally to the provisions of this chapter.

And *see*, RCW 82.14.020(7) ["local option" retail sales and use tax]:

> The meaning ascribed to words and phrases in chapters 82.04, 82.08 and 82.12 RCW, as now or hereafter amended, insofar as applicable, shall have full force and effect with respect to taxes imposed under authority of this chapter;

And *see*, RCW 82.04.050(4) [state B&O tax] in part:

> The term [retail sale] shall also include the renting or leasing of tangible personal property to consumers . . . .

material facts; thus, we review a purely legal issue. Construction of a statute is a question of law that we review de novo under the error of law standard. *City of Pasco v. Public Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992). The reviewing court's obligation is to give effect to the intent of the Legislature. Review begins with the plain language of the statute. *Lacey Nursing Ctr., Inc. v. Department of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995).

## I. No Limitation

The parties focus on the statute's phrase "retail sales of tangible personal property." RCW 35.21.710.[2] There is no language in the statute setting out a definition of "retail sale" or requiring cities to adopt the state tax definition defining leasing activity as a "retail sale." Nor is there any language requiring city rates of any kind to be uniform

---

[2]RCW 35.21.710. License fees or taxes on certain business activities—Uniform rate required—Maximum rate established.

Any city which imposes a license fee or tax upon business activities consisting of the making of retail sales of tangible personal property which are measured by gross receipts or gross income from such sales, shall impose such tax at a single uniform rate upon all such business activities. The taxing authority granted to cities for taxes upon business activities measured by gross receipts or gross income from sales shall not exceed a rate of .0020; except that any city with an adopted ordinance at a higher rate, as of January 1, 1982 shall be limited to a maximum increase of ten percent of the January 1982 rate, not to exceed an annual incremental increase of two percent of current rate: PROVIDED, That any adopted ordinance which classifies according to different types of business or services shall be subject to both the ten percent and the two percent annual incremental increase limitation on each tax rate: PROVIDED FURTHER, That all surtaxes on business and occupation classifications in effect as of January 1, 1982, shall expire no later than December 31, 1982, or by expiration date established by local ordinance. Cities which impose a license fee or tax upon business activities consisting of the making of retail sales of tangible personal property which are measured by gross receipts or gross income from such sales shall be required to submit an annual report to the state auditor identifying the rate established and the revenues received from each fee or tax. This section shall not apply to any business activities subject to the tax imposed by chapter 82.16 RCW. For purposes of this section, the providing to consumers of competitive telephone service, as defined in RCW 82.04.065, shall be deemed to be the retail sale of tangible personal property. [Amended by LAWS OF 1981, ch. 144, § 6, eff. Jan. 1, 1982; LAWS OF 1982, 1st Ex. Sess., ch. 49, § 7, eff. April 20, 1982; LAWS OF 1983, ch. 99 § 7, eff. April 22, 1983; LAWS OF 1983, 2nd Ex. Sess., ch. 3, § 33, eff. July 1, 1983.]

with those of the State. Tacoma asserts it remains free to define what constitutes a retail sale, while Enterprise argues that the State's definition of "retail sale" must govern.

▆▆ Tacoma relies heavily on *Commonwealth Title Ins. Co. v. City of Tacoma*, 81 Wn.2d 391, 502 P.2d 1024 (1972). In *Commonwealth Title*, the court held that the City of Tacoma could tax the business of an insurance company under the "service or other" classification when imposing its B&O tax, while at the same time imposing the "local option" sales tax under the state "retail" classification. 81 Wn.2d at 394-95. The court reaffirmed the independent taxing authority of cities: "[A] city or municipality may define its taxation categories as it sees fit unless it is restrained by a constitutional provision or legislative enactment." *Commonwealth Title*, 81 Wn.2d at 394.

Enterprise principally argues that Tacoma is not free to define what constitutes a "retail sale" within the context of RCW 35.21.710. Otherwise, Enterprise asserts, the statute is rendered meaningless, because Tacoma could arbitrarily exclude some retail activity from the tax cap and tax such activity at a higher rate. Accordingly, the State's definition of retail sale must govern. Enterprise suggests harmonizing this statute with the other taxing statutes in which the State broadly defines retail sales to include all rental activity. Thus, Enterprise concludes, Tacoma may not tax Enterprise's rental activity above the 0.2 percent cap of RCW 35.21.710. But Enterprise can point to no language of preemption or restriction in any statute.

Two cases from the Supreme Court specifically address Tacoma's authority to impose the B&O tax under the "service" classification: *City of Tacoma v. Seattle-First Nat'l Bank*, 105 Wn.2d 663, 717 P.2d 760 (1986) and *Financial Pac. Leasing, Inc. v. City of Tacoma*, 113 Wn.2d 143, 776 P.2d 136 (1989). In *Seattle-First*, the Supreme Court struck down the application of Tacoma's B&O tax on a bank, because: (1) a state B&O tax statute expressly provided that cities must adopt the State's "definitions, deductions

and exemptions" in their taxation of banks; and (2) the State defined such activities as "retailing." 105 Wn.2d at 666 (citing RCW 82.14A.010 and RCW 82.04.050(2), (4)). Here, Tacoma is correct, RCW 35.21.710 lacks the specific language contained in the banking statute that required application of the State's definition of a retail sale. In *Financial Pac. Leasing*, the court simply refused to extend the application of RCW 82.14A.010 to a leasing company, holding that leasing companies were not "other financial institutions" within the contemplation of the statute.

*Commonwealth Title* holds that the preemption or restraint of municipal taxing authority may be accomplished only through specific, express statutory language. Examples of that restriction and/or preemption are: (1) sales and use tax, RCW 82.14.070 (contains specific language that the local sales and use tax be "consistent and uniform . . . with the state sales and use tax"); (2) telephone service deemed as retail sale, RCW 35.21.710; (3) tax upon insurance companies, RCW 48.14.020; (4) liquor tax, RCW 66.08.120; and (5) motor vehicle fuel tax, RCW 82.36.440. These examples demonstrate that the Legislature knows how to restrict or preempt the exercise of a city's taxing power. The Legislature has not restricted or preempted cities' taxing authority with regard to either the cities' classification or its taxation (apart from the cap and uniformity within the cities' classification) by the passage of RCW 35.21.710. The trial court erred.

## II. Grandfather Clause

■■ RCW 35.21.710 contains a "grandfather clause" that also controls the outcome of this appeal. The pertinent part states:

> except that any city with an adopted ordinance at a higher rate, as of January 1, 1982 shall be limited to a maximum increase of ten percent of the January 1982 rate, not to exceed an annual incremental increase of two percent of current rate: PROVIDED, That any adopted ordinance *which classifies according to different types of business or services* shall be subject

to both the ten percent and the two percent annual incremental increase limitation *on each tax rate*:

RCW 35.21.710 (emphasis added). The clause specifically grandfathers city tax rates in excess of 0.2 percent if such rates were law before January 1, 1982. Additionally, the emphasized portion of the statute ratifies the cities' determination of which classification business activity falls within. Each tax rate resulting from the classification of business activity is explicitly exempted from the 0.2 percent cap.

The statutory language is unambiguous. "[U]nder principles of statutory construction, a statute is not subject to judicial interpretation where its language is plain, unambiguous, and well understood according to its natural and ordinary sense and meaning." *State v. McCollum*, 88 Wn. App. 977, 988, 947 P.2d 1235 (1997) (citing *State v. Lewis*, 86 Wn. App. 716, 717-18, 937 P.2d 1325 (1997)). We do not often delve into the legislative history of an unambiguous statute. However, we note that the legislative record confirms our reading of RCW 35.21.710. In 1982, the statute was amended to include the 0.2 percent tax cap and the grandfather provisions at issue here.[3] The SENATE JOURNAL contains several pertinent "Points of Inquiry." During debate on the amendment, Senator Zimmerman specifically noted that Tacoma had five different B&O tax rates, including 0.5 percent for services. 2 SENATE JOURNAL, 47th Legis., 1st and 2d Spec. Sess. 2518 (Wash. 1982). When critics of the amendment raised concerns that cities would lose significant revenue as a result of the 0.2 percent cap, Senator

---

[3] *See* LAWS OF 1982, 1st Ex. Sess., ch. 49, § 7. When the statute was first passed in 1972, it did not contain such a tax cap. The entire statute simply provided:

Any city which imposes a license fee or tax upon business activities consisting of the making of retail sales of tangible personal property which are measured by gross receipts or gross income from such sales, shall impose such tax at a single uniform rate upon all such business activities. This section shall not apply to any business activities subject to the tax imposed by chapter 82.16 RCW.

LAWS OF 1972, 1st Ex. Sess., ch. 134, § 6.

Newhouse responded by emphasizing the grandfather provisions: "If we grandfather in all existing rates, how in theworld can there be a three or four million dollar loss to anybody?" 2 SENATE JOURNAL, *supra*. The Senate then adopted the amendment on reconsideration. The only conclusion that we can draw is that the Legislature was specifically aware of some cities' multiple classifications and that the Legislature sought to exempt such existing tax schemes from the sweep of the new tax cap.

As of January 1, 1982, Tacoma's B&O tax rate for services was 0.5 percent. *See* Tacoma Ordinance 19069 § 2, passed April 1, 1970. About seven years ago, Tacoma actually *reduced* the tax rate on services to its current rate, 0.48 percent. *See* Tacoma Ordinance 25019, passed December 3, 1991. Enterprise conceded below that under the Tacoma tax code definitions, Enterprise's business activity could be taxed only under the "service" classification.

Accordingly, we hold that Tacoma's 'service' tax classification as applied to Enterprise is specifically exempted by the grandfather clause contained in RCW 35.21.710. Thus, under this secondary rationale, the trial court erred.

Reversed.

HOUGHTON and HUNT, JJ., concur.

Review granted at 138 Wn.2d 1001 (1999).